Sandra Kay MELTON, Appellant,

v.

DALLAS COUNTY CHILD WELFARE UNIT OF the TEXAS DEPARTMENT OF HUMAN RESOURCES, Appellee.

No. 20360.

Court of Civil Appeals of Texas, Dallas.

July 3, 1980.

Paul G. Johnson, Staff Counsel for Inmates, Texas Dept. of Corrections, Sugarland, for appellant.

Maridell Templeton, Asst. Dist. Atty., Dallas, for appellee.

Jeffrey H. Kilgore, Irving, for guardian ad litem.

Before GUITTARD, C. J., and AKIN and STOREY, JJ.

GUITTARD, Chief Justice.

Sandra Kay Melton appeals from a decree terminating her parental rights to her two sons on the ground that the evidence is insufficient as a matter of law to support the jury's findings. She also complains of the admission of hearsay statements by the children concerning their desire for adoption, of opinions on the ultimate issues by a caseworker in the Department of Human Resources, and comments by the judge that the caseworker had no duty to notify her of court hearings. We hold that evidence supports the verdict, that the hearsay statements were properly admitted, and that there was no error in admitting the caseworker's opinions or in the judge's comment. Accordingly, we affirm.

## EVIDENCE SUPPORTING VERDICT

The two children were seven and nine years old at the time of trial. With respect to each child, the jury found that the mother had knowingly placed or knowingly allowed the child to remain in conditions or surroundings that endangered his physical or emotional well-being and had engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangered his physical or emotional well-being. The jury also found that termination of the parent-child relationship was in the best interest of each child.

Our review of the record discloses ample evidence to support these findings. Although the mother was not shown to be

guilty of affirmative mistreatment of the children, she never provided them with a stable home life and frequently left their care to others without adequate provision for their welfare. She and their father, from whom she was separated at the time of trial, (and whose parental rights had also been terminated), had engaged in criminal activities and during a period of several months were fugitives from justice. When the mother separated from the father, she left the children with him, knowing that he was an irresponsible drunkard. The mother worked at several jobs, principally as a bartender or cocktail waitress, but never kept any job very long, although she testified that after the separation she was the only source of support for the children. At the time of the separation, a friend of the father took the children to the Dallas County Child Welfare Unit of the Department of Human Resources. While they have been in the care of the Department, the mother has seldom visited them, has disappointed them on several occasions when they expected to see her, and has contributed only minimally to their support. At the time of trial the mother was serving a term in the Texas Department of Correction for conviction of several charges of forgery.

In spite of the mother's neglect, a psychologist who testified as an expert witness testified that they are bright, well-adjusted children, considering their circumstances. He also testified, however, that they are seriously in need of the stable home environment that the mother has been unable or unwilling to provide, and that there was no reason to suppose that she would do better in the future despite her protestations of good intentions. The principal caseworker also testified that in her opinion the mother's conduct and neglect of the children had endangered their emotional well-being.

The mother's attack on the verdict is based principally on her own testimony of love and affection between her and the children and that her failure to care for the children was due to circumstances beyond her control, and on certain testimony by the psychologist and caseworkers concerning the emotional stability of the children in spite of their difficult circumstances. This testimony, in our opinion, does not negate the evidence of neglect. In our opinion, the jury was justified in rejecting the mother's explanations and statements of good intentions and in concluding that her established pattern of conduct was such as to endanger the children's emotional well-being to such an extent that termination of the parent-child relationship would be in their best interest. Tex. Fam. Code Ann. § 15.02 (Vernon Supp. 1980); *see D___ F___ v. State*, 525 S.W.2d 933, 939–40 (Tex.Civ.App.—Houston [1st Dist.] 1975, no writ).

### HEARSAY STATEMENTS OF CHILDREN

When one of the caseworkers was testifying, she was asked what response the older boy had given to a question as to whether he wanted to live with his mother or to be adopted. There was no objection to this particular question, but a hearsay objection to a similar question had been overruled. The witness answered that the child "said he thought about his mother, but that he thought more about adoption." The witness was then asked what the younger boy's response had been to the same question. Over a hearsay objection, the witness was permitted to testify that the child had said that he wanted adoption.

The Department contends that this testimony was admissible as an exception to the hearsay rule to show the children's state of mind. We agree. Declarations concerning the declarant's state of mind fall within a recognized exception to the hearsay rule. 1 C. McCormick & R. Ray, Texas Law of Evidence § 862 (Texas Practice 2d ed. 1956); 6 J. Wigmore, Evidence § 1714, 1730 (Chadbourn ed. 1976); *cf. Lisle v. Lynch*, 318 S.W.2d 763, 766–67 (Tex.Civ.App.—Fort Worth 1958, writ ref'd n. r. e.). The children's statements concerning their desire for adoption, though offered for the truth of the matter stated, namely, their desire for adoption as opposed to any desire to return to their mother, was

relevant to the issue of whether their mother's conduct had endangered their emotional well-being. If such statements were prejudicial to the mother with respect to any issue to which they were not relevant, she had the burden to request a limiting instruction. *See Huber v. Buder*, 434 S.W.2d 177, 180 (Tex.Civ.App.—Fort Worth 1968, writ ref'd n. r. e.); *cf. Forrest v. Moreno*, 161 S.W.2d 364, 365 (Tex.Civ.App.—San Antonio 1942, writ ref'd) (party could not complain on appeal of trial court's failure to limit testimony, since no limitation sought in trial court).

### CASEWORKER'S OPINION ON ULTIMATE ISSUE

■ Counsel for the Department asked the principal caseworker for the children a series of questions inquiring whether by certain conduct the mother left the children "in conditions and surroundings that endangered their physical or emotional well-being." Over the objections that these questions called for a legal conclusion on the part of the witness, the caseworker was permitted to testify that she believed that their emotional well-being was in danger. We conclude that the question of whether the mother's conduct endangered the emotional well-being of the children was a question of fact rather than a question of law or legal definition; consequently, the testimony was proper under *Carr v. Radkey*, 393 S.W.2d 806, 813–14 (Tex.1965).

### JUDGE'S COMMENT ON CASEWORKER'S DUTY

■ At the trial the Department presented testimony that the mother had failed to appear at several hearings in court. When the caseworker was on the stand, she was cross-examined concerning mistakes she may have made in advising the mother concerning dates she should appear in court. At this point the judge interposed a comment that it was not the caseworker's obligation to notify any party as to the court dates. Counsel for the mother objected that this was a comment on the weight of the evidence. The judge responded that it was not a comment because the court was obligated to notify the parties.

We find no error in this ruling. The court was correct in advising the jury that the obligation to advise the parties of the dates of a hearing rested on the court rather than on the caseworker. The court's observation clarified this matter for the jury and did not reflect favorably or unfavorably on the testimony of any witness. In our opinion, the judge was justified in advising the jury with respect to the customary procedures of his court. *See Swinney v. Winters*, 532 S.W.2d 396, 403 (Tex. Civ.App.—San Antonio 1975, writ ref'd n. r. e.); *Riverbend Country Club v. Patterson*, 399 S.W.2d 382, 385 (Tex.Civ.App.—Eastland 1965, writ ref'd n. r. e.).

Affirmed.