Edna Irene **SPURLOCK**, Appellant,

v.

**TEXAS DEPARTMENT OF PRO-TECTIVE AND REGULATO-RY SERVICES, Appellee.**

No. 03–94–00268–CV.

Court of Appeals of Texas, Austin.

June 7, 1995.

Rehearing Overruled Sept. 13, 1995.

---

Mary Kay Sicola, Austin, for appellant.

Allison Benesch, Asst. Dist. Atty., Austin, for appellee.

J. Andrew Hathcock, Austin, for children.

Before CARROLL, C.J., and ABOUSSIE and JONES, JJ.

CARROLL, Chief Justice.

The Texas Department of Protective and Regulatory Services (the "Department"), appellee, sought termination of the parental rights of appellant Edna Spurlock. *See* Tex. Fam.Code Ann. § 15.024 (West Supp.1995).[1]

---

1. The Family Code has been completely revised effective April 20, 1995. *See* Act of Apr. 6, 1995, H.B. 655, § 2, 74th Leg., R.S. However, the revisions do not affect proceedings begun before

After a bench trial, the district court ordered the requested relief. We will affirm the trial-court judgment.

## BACKGROUND

The Department brought a suit to terminate the parent-child relationship between appellant and two of her children, Soniva and Lorenzo Spurlock, pursuant to section 15.024 of the Texas Family Code, which authorizes termination of parental rights if the court finds that:

(1) the parent has a mental or emotional illness or mental deficiency that renders the parent unable to provide for the physical, emotional, or mental needs of the child, and the illness or deficiency, in all reasonable probability, proved by clear and convincing evidence, renders the parent unable to provide for those needs from the time of the court's finding until the 18th birthday of the child;

(2) the department has been the permanent managing conservator of the child of the parent for the six months preceding the filing of the petition; and

(3) the termination is in the best interest of the child.

Tex.Fam.Code Ann. § 15.024(a). Thus, the Department had the burden of proving by clear and convincing evidence that as to each child appellant has a mental or emotional illness that renders her incapable of meeting the child's physical, emotional, and mental needs until the child reaches the age of eighteen *and* that it was in the best interest of the child to terminate her parental rights.

The trial court signed a final decree terminating appellant's parental rights at the conclusion of a bench trial. In its final decree of termination, the trial court found that all three elements of section 15.024(a) had been met. By five points of error, appellant challenges the legal and factual sufficiency of the evidence supporting the trial court's judgment and the constitutionality of section 15.024.

April 20, 1995 and, therefore, do not apply to the

## DISCUSSION

### A. Sufficiency of the Evidence

 In her first and second points of error, appellant attacks the legal and factual sufficiency of the evidence underlying the trial court's judgment. The termination of parental rights involves fundamental constitutional rights. *See Stanley v. Illinois,* 405 U.S. 645, 651, 92 S.Ct. 1208, 1212, 31 L.Ed.2d 551 (1972). Therefore, evidence supporting the finding that parental rights should be terminated must be clear and convincing. *In re G.M.,* 596 S.W.2d 846, 847 (Tex.1980). "The clear and convincing standard of proof is intentionally placed on the party seeking the termination of the parental rights, so as to create a higher burden to fulfill, because of the severity and permanence of the termination of the parent-child relationship." *Harris v. Herbers,* 838 S.W.2d 938, 941 (Tex. App.—Houston [1st Dist.] 1992, no writ). This standard requires more proof than the preponderance of the evidence standard applied in civil cases but less proof than the reasonable doubt standard applied in criminal cases. *In re G.M.,* 596 S.W.2d at 847. The clear and convincing standard requires the degree of proof that will produce in the mind of the fact-finder a firm belief or conviction as to the truth of the matters sought to be proved. *Id.*

 When both legal and factual sufficiency challenges are raised on appeal, the court must first examine the legal sufficiency of the evidence. *Glover v. Texas Gen. Indem. Co.,* 619 S.W.2d 400, 401 (Tex.1981). In reviewing a challenge to the legal sufficiency of the evidence, the court is to consider only the evidence and inferences tending to support the jury's findings and disregard all evidence and inferences to the contrary. *Stafford v. Stafford,* 726 S.W.2d 14, 16 (Tex. 1987). In reviewing the factual sufficiency of the evidence, the court must consider and weigh all the evidence and should set aside the judgment only if it is so contrary to the overwhelming weight of the evidence to be clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986). The clear and convincing standard of proof does not alter

present case.

the appropriate standard of appellate review. *D.O. v. Texas Dep't of Human Servs.*, 851 S.W.2d 351, 353 (Tex.App.—Austin 1993, no writ).

The instant case involves a schizophrenic mother and two young children. Appellant's mental illness has been diagnosed as chronic paranoid schizophrenia and schizoaffective disorder. Soniva, who was born in April 1989, has not lived with her mother since she was a baby, and Lorenzo, who was born in June 1990, has never lived with his mother. Both children lived with their grandmother until her death in early 1991 and then with their great-aunt for a short time until she requested that they be placed in foster care because she could no longer care for them. The Department has made efforts to place the children with relatives to no avail, and they have remained in foster care since April 1991.

Appellant does not dispute the fact that she suffers from a chronic mental illness. Instead, she contends that the Department has failed to establish by clear and convincing evidence that she cannot meet the physical, emotional, and mental needs of her children, that she will remain incapable of providing for those needs until the children reach the age of eighteen, and that termination is in the best interest of the children. We disagree.

### 1. Inability to Meet Physical, Emotional, and Mental Needs of the Children

■ In order to prove that appellant cannot meet the physical, emotional, and mental needs of Soniva and Lorenzo, the Department introduced into evidence the testimony of Dr. Russell Bach, appellant's psychiatrist for the last two years. Dr. Bach testified that appellant is incapable of meeting her own needs and that she is unable to live on her own. When asked whether appellant's mental illness rendered her incapable of providing for the mental, physical, or emotional needs of her children, Bach responded: "I would believe that she would not be able to provide on a day-to-day basis for her children."

The Department also introduced the testimony of Michael Kent, the Department caseworker assigned to appellant since February 1992, who testified that appellant's mental illness has rendered her incapable of meeting her children's physical or emotional needs. Kent explained that because there was sufficient evidence of appellant's emotional abuse of the children during her weekly visits with them, the court ordered that the visits be decreased to once a month in February 1993. Kent also opined that appellant was incapable of meeting the "daily" needs of her children. Chris Johnson, another caseworker assigned to appellant, observed appellant's interaction with the children during supervised visits and testified that appellant was not aware of her children's needs during those visits.

None of the witnesses used the specific phrase "mental needs" in their testimony concerning appellant's ability to meet her children's needs. However, "mental" is defined as "[r]elating to the total *emotional* or intellectual response of an organism to its environment." *Webster's Third New International Dictionary* 1411 (Philip B. Gove ed., 1961) (emphasis added). As this definition demonstrates, the emotional and intellectual aspects of a child's life are necessarily intertwined and interdependent. If a parent is not meeting the emotional needs of her children, neither is she meeting their mental needs. The evidence and inferences drawn from the evidence are thus legally sufficient to support the court's finding that appellant was incapable of meeting the physical, emotional, and mental needs of her children.

In support of her contention that her mental illness does not prevent her from meeting some of the children's physical, emotional, and mental needs, appellant introduced into evidence the testimony of Lisa Clay, the owner of the group home where appellant now lives and the permanent managing conservator of appellant's third child, Asia, who is not a subject of this suit. Clay testified that Soniva and Lorenzo did not appear anxious or scared around their mother and that they sometimes hugged her when they saw her. Clay asserted that appellant has love and care to offer the children and that she could meet some of the physical, emotional, and mental needs of the children under su-

pervised conditions. In addition, appellant claims that the fact that the Department agreed to her being named permanent possessory conservator of Asia evidences that she is capable of meeting some of the physical, emotional, and mental needs of her other two children. Appellant also points to the cross-examination of Bach, in which he qualified his testimony on direct and testified that appellant's condition rendered her incapable of meeting her children's physical needs, specifically refusing to testify that her condition rendered her incapable of meeting their mental and emotional needs.

■ After considering and weighing all of the evidence, we conclude that the evidence is factually sufficient to support the trial court's judgment that appellant cannot meet the physical, emotional, and mental needs of the two children involved in the present case. Clay admitted that she has seen appellant interact with Soniva and Lorenzo only two times and offered no testimony demonstrating that appellant could meet their physical, emotional, and mental needs.[2] In addition, evidence that the Department agreed to appellant being named permanent possessory conservator of Asia is not inconsistent with its contention that appellant is incapable of meeting the physical, emotional, and mental needs of Soniva and Lorenzo. Clay and her husband have agreed to assume permanent managing conservatorship of Asia and to supervise visitation between appellant and Asia. In addition, appellant has never demonstrated any physically or emotionally abusive behavior with Asia. Although the Clays have offered to supervise visitation between Asia and her two older siblings, they have specifically refused to assume permanent managing conservatorship of Soniva and Lorenzo, and the Department has been unable to locate anyone willing to take on permanent managing conservatorship of the children and to supervise visitation between appellant and the children. The Department was able to preserve the relationship between appellant and Asia without regard to whether appellant could meet Asia's physical, emotional, and mental needs because the Clays have assumed responsibility for meeting those needs. Unfortunately, Soniva and Lorenzo do not have a family like the Clays willing to assume such responsibility while also allowing the children to maintain a relationship with their mother; therefore, the Department determined it was necessary to seek termination of appellant's parental rights. We thus conclude that the evidence is factually sufficient because the judgment is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust.

### 2. Appellant's Condition Will Not Resolve Itself Over Time

■ Section 15.024 requires the Department to prove that appellant's mental illness will, *in all reasonable probability,* render her unable to provide for Soniva and Lorenzo's needs until the children reach the age of eighteen. For the last nine years, appellant has suffered from serious mental health problems. Her mental illness has forced her to be hospitalized numerous times over the years, and she has a history of noncompliance with her medication, which has been prescribed for impulse control and mood stabilization. Dr. Bach testified that appellant's condition will not resolve itself with time. In fact, Dr. Bach explained that if appellant discontinued her medication or left her structured care to live on her own, her condition could deteriorate to a point that she would need hospitalization again. This amounts to legally sufficient evidence that appellant will remain incapable of meeting the needs of Soniva and Lorenzo until the year 2008, when Lorenzo reaches eighteen.

■ Appellant argues that the Department failed to meet the durational requirement under section 15.024. In support of this assertion, she relies primarily on the testimony of John Tyler, a Department of Mental Health and Mental Retardation caseworker who has served as appellant's case manager since August 1993. In that capacity, Tyler manages and oversees appellant's income and resources, housing, and assignment to a psychiatrist. Tyler, who has a

---

**2.** Clay did testify that appellant spent time almost daily with Asia and that she would hold the baby and help care for the baby for short periods of time.

masters of science degree in social work, testified that future changes and advances in research and medication to treat mental illnesses render it impossible to predict with certainty appellant's mental health ten years from now. After considering and weighing all of the evidence, we conclude that the trial court's judgment that *in all reasonable probability* appellant will not be able to care for her children until they reach the age of eighteen is supported by factually sufficient evidence. The statute does not require scientific certainty, but rather reasonable probability. According to the evidence produced at trial, appellant's condition will not improve with time absent future advances in research and medication; even if such advances occur, her condition will improve only if appellant, who has a history of noncompliance with medication, takes the medication. The weight of appellant's evidence is not such that the judgment is clearly wrong and unjust.

### 3. Best Interest of the Children

In *Holley v. Adams,* 544 S.W.2d 367 (Tex.1976), the supreme court held that a number of factors may be examined in ascertaining the best interest of a child: (1) emotional and physical needs of the child now and in the future; (2) parental abilities of the parent seeking custody; (3) programs available to assist the parent seeking custody; (4) the plans for the child by the parent or the agency seeking custody; (5) the stability of the home or the proposed placement; and (6) any acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one. *Id.* at 371–72. After consideration of the factors set out in *Holley* and the evidence before the trial court, we conclude that the evidence is legally and factually sufficient to support the trial court's finding that the best interest of the children will be served by terminating appellant's parental rights.

As we have already determined, there is legally and factually sufficient evidence that appellant cannot meet the daily needs of her children. The children have been in foster care since 1991 and will remain there for the next thirteen years unless advances in research and psychopharmacology improve appellant's condition to such a degree that she can take care of them. According to Dr. Bach's testimony, appellant's condition will not improve over time. Moreover, Kent testified that the children lack a strong bond with their mother and seem ambivalent about her. He described the children as very adoptable and testified that the children need permanency in their lives and deserve the chance to form an emotional attachment to an adoptive family. This evidence is legally sufficient to support the trial court's judgment that termination is in the best interest of the children.

Appellant argues that termination is not in the best interest of the children because it would prevent them from maintaining a relationship with their sister, Asia. Appellant also argues that termination cannot be in the best interest of Soniva and Lorenzo if it is in the best interest of Asia that appellant retain permanent possessory conservatorship of Asia. With regard to appellant's latter argument, we have already determined that the Department's treatment of Asia's situation is distinguishable and not inconsistent with its decision to seek termination in the present case. With regard to the former argument, the Department introduced into evidence testimony that the children had never met their baby sister and that depending on the adoptive parents, the children may be able to maintain a relationship with Asia even though appellant's parental rights have been terminated.

We have balanced the evidence of the children's need for permanency and stability against the evidence that termination will deprive the children of some sort of relationship with their mother and baby sister Asia. The children have not had an opportunity to form a strong bond with either their mother or Asia. In addition, if appellant's parental rights were not terminated, the Department would have to serve as the children's permanent managing conservator for many years, keeping them in foster care and not free for adoption. The *Holley* test focuses on the best interest of the children, not the best interest of the parent. Accordingly, the trial court may consider the consequences of its

failure to terminate parental rights. When the only available parent is not suitable as a primary caretaker,[3] as the evidence shows appellant is not, the trial court could properly decide that the virtually permanent foster care arrangement necessary if appellant retained parental rights was not in the children's best interest. As this Court has explained:

> It may well have been in [appellant's] best interest to continue to have limited access to [the children] but the evidence is legally and factually sufficient to support the trial court's decision that it was in [the children's] best interest to terminate [appellant's] parental rights in order to make possible [their] future adoption.

*D.O.*, 851 S.W.2d at 358. We thus conclude that the evidence is factually sufficient to support the trial court's finding that termination is in the best interest of the children.

Because we have determined that the trial court's findings are supported by legally and factually sufficient evidence, we overrule appellant's first and second points of error.

**B. Constitutionality of Section 15.024**

In her third, fourth, and fifth points of error, appellant challenges the constitutionality of section 15.024 on grounds that: (1) the statute violates her right to equal protection under the United States Constitution; (2) the statute violates her right to due course of law under the Texas Constitution; and (3) the statute is unconstitutionally vague because it fails to define mental and emotional illness.

Appellant contends that section 15.024 violates the Equal Protection Clause of the federal constitution. U.S. Const. amend. XIV. According to appellant, the statute is unconstitutional because it singles out the mentally ill and allows termination of their parental rights without proof of culpable conduct by the parent.

 Legislation dealing with the mentally ill falls within the area of general social welfare regulation that must be rationally related to a legitimate state interest. *City of*

*Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 446, 105 S.Ct. 3249, 3257–58, 87 L.Ed.2d 313 (1985). In *City of Cleburne*, the Supreme Court explicitly refused to recognize the mentally ill as a quasi-suspect class. *Id.* Under the "rationally related" standard, "[t]he State may not rely on a classification whose relationship to an asserted goal is so attenuated as to render the distinction arbitrary or irrational." *Id.* Preserving and promoting the welfare of children is a legitimate state interest. *In re Carroll*, 819 S.W.2d 591, 592 (Tex.App.—Tyler 1991, no writ). This legitimate interest in the protection of children includes the protection of children whose parents suffer from mental illness. *Id.* Having determined that there is a legitimate state interest, we must determine if section 15.024 is rationally related to that interest.

 We conclude that section 15.024 is rationally related to the state's legitimate interest in protecting children. *See id.* at 592–93. The termination of the rights of a parent who is incapable of caring for his or her children because of mental illness is rationally related to the state's interest in protecting those children from languishing indefinitely in foster care, deprived of the opportunity of permanent placement in a stable, healthy home. The focus of the statute is on the ability of the parent to meet the children's needs, not merely on the status of the parent as mentally ill; proof by clear and convincing evidence is required that the mentally ill parent is unable to meet the children's needs now and will continue to be unable to meet those needs throughout the children's minority. We therefore overrule appellant's third point of error.

Appellant asserts in her fourth point of error that section 15.024 violates her right to due course of law under the state constitution. Tex. Const. art. I, § 19. While appellant complains that the statute violates the Texas Constitution, she proffers no argument or authority as to the protection offered by the Texas Constitution or how that protection differs from the protection offered by

**3.** This is the case here because the parental rights of the children's father have already been terminated.

the U.S. Constitution. She merely cites to authority in which courts have interpreted the Texas Constitution more broadly than its federal counterpart. We decline to pursue appellant's Texas constitutional arguments for her and accordingly overrule her fourth point of error. *See Riddle v. State,* 888 S.W.2d 1, 7 (Tex.Crim.App.1994); *Johnson v. State,* 853 S.W.2d 527, 533 (Tex.Crim.App. 1992), *cert. denied,* — U.S. —, 114 S.Ct. 154, 126 L.Ed.2d 115 (1993).

In her fifth point of error, appellant contends that section 15.024 is unconstitutionally vague because it fails to define mental or emotional illness. Before an appellate court will address the alleged unconstitutional vagueness of a statute, appellant must first establish that the statute is unconstitutional as applied to her. *Vuong v. State,* 830 S.W.2d 929, 941 (Tex.Crim.App.), *cert. denied,* — U.S. —, 113 S.Ct. 595, 121 L.Ed.2d 533 (1992). That the statute may be, in its application, unconstitutional as to others is not sufficient. *Id.* Appellant fails to make any such showing and, instead, makes only a general attack on section 15.024.

Assuming appellant had made the argument that the statute is unconstitutional as applied, we conclude that section 15.024 is constitutional as applied to appellant. We follow the holding of the Tyler Court of Appeals in *Carroll* that section 15.024 is not void for vagueness even though the term "mental illness" is not defined. *In re Carroll,* 819 S.W.2d at 593. When a statutory term is undefined, the appellate court should read the crucial term according to its plain and ordinary meaning. Tex. Gov't Code Ann. § 312.002 (West 1988). "Mental disease" is defined as "a disease characterized esp. by mental symptoms." *Webster's Third International Dictionary, supra,* at 1411. Appellant's illness clearly falls within this definition. Appellant herself concedes that she suffers from schizophrenia, a recognized mental illness, and the Department's medical expert, Dr. Bach, testified that appellant suffers from a chronic mental illness. We overrule appellant's fifth point of error.

**CONCLUSION**

Having overruled all of appellant's points of error, we affirm the judgment of the trial court.