Aguirre 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-95-00627-CV







Juanita Aguirre, Appellant



v.



Texas Department of Protective and Regulatory Services, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT


NO. 94-03960-A, HONORABLE SCOTT McCOWN, JUDGE PRESIDING 







 Juanita Aguirre is the mother of five children, two of whom are involved in this appeal. 
After a three-day trial, the jury found Ms. Aguirre engaged in conduct or knowingly placed her two
youngest children in surroundings or with persons who endangered their physical or emotional well-being
and that termination of her parental rights would be in the best interest of the children. Ms. Aguirre brings
five points of error, challenging the sufficiency of the evidence and complaining that the trial court admitted
hearsay testimony along with inadmissible medical and caseworker reports, allowed the Department to ask
leading questions, and permitted closing argument that went outside the record. We will affirm the trial
court's judgment. 



BACKGROUND


 Two of Ms. Aguirre's children were over eighteen and living apart from her at the time of
these events. The three children still at home were the subject of investigation by the Department of
Protective and Regulatory Services. Based on reports that Ms. Aguirre's boyfriend, Luis Tellez, was
physically and sexually abusing the children, the Department removed the three children in April 1994. The
Department formulated a plan for the family that required Ms. Aguirre to attend counseling sessions at the
Center for Battered Women and the Day Glo Family Treatment Program. When Ms. Aguirre failed to
make progress in recognizing or dealing with the abuse that had occurred in her home after a year of
treatment, the Department brought suit to terminate her parental rights. The jury found that the termination
of Ms. Aguirre's parental rights would be in the best interest of the children. Without terminating the
parental rights to the oldest child, who was living in a residential treatment center, the jury found that it
would be in his best interest to appoint the Department his managing conservator. After denying appellant's
motions for new trial and for judgment notwithstanding the verdict, the trial court rendered an interlocutory
order of termination. 

 In a separate proceeding, Miguel Aguirre, Sr., father of the three children, was cited by
publication and appeared only through his appointed counsel. The trial court then found that the father had
engaged in conduct or knowingly placed the children with persons who endangered their physical or
emotional well-being and terminated the father's parental rights to the two younger children. The trial court
severed the cause dealing with the two younger children, Michelle and Vicente, from the cause dealing with
their older brother, Miguel, Jr., and entered a final order of termination. 

 Miguel Aguirre, Sr. does not appeal the termination of his parental rights, and Ms. Aguirre's
appeal in this cause concerns only her parental rights to the two younger children.



DISCUSSION


 The jury found, by clear and convincing evidence, that Ms. Aguirre knowingly placed or
allowed her children to remain in conditions or surroundings dangerous to their physical or emotional well-being, or engaged in conduct or knowingly placed the children with persons who engaged in conduct
dangerous to their physical or emotional well-being. See Tex. Fam. Code Ann. § 161.001(1)(D & E)
(West 1996). Ms. Aguirre raises several points of error regarding admissibility of evidence. We will
address these complaints before evaluating her challenge to the factual sufficiency of the evidence to
support the jury's verdict.



Hearsay

 In point of error one Aguirre complains that the trial court allowed the jury to evaluate
hearsay evidence admitted through the testimony of six expert witnesses. The decision to admit or exclude
evidence is committed to the sound discretion of the trial court and is reviewed for abuse of that discretion. 
Syndex Corp. v. Dean, 820 S.W.2d 869, 873 (Tex. App.--Austin 1991, writ denied).

 None of the Aguirre children testified at trial. The court permitted Robert Perez, a school
counselor, to testify as to certain statements Miguel, Jr. made regarding his fear of his stepfather, Luis
Tellez, and his internal conflict about the need to protect his younger siblings and his mother from Tellez's
abusive behavior. The trial court admitted the testimony over a hearsay objection, instructing the jury twice
to consider the testimony not for the truth of the matters asserted but "only as it affects the state of mind of
the child." Likewise the trial court allowed Lee Ann Artis, another school counselor, to relate Michelle's
statements regarding Luis Tellez's attempts to kiss her, lay on top of her, and place his hands on her breasts
and her "privates." Artis further testified, without objection, that during her session with Michelle she
learned that Michelle told her mother what Luis had done and her mother said, "If you tell, you're going to
be taken away from me." The trial court also admitted Artis's testimony under the state of mind exception
to the hearsay rule. We hold the trial court did not abuse its discretion in allowing evidence to reflect the
children's state of mind regarding their fear and upset. Baxter v. Texas Dep't of Human Resources, 678
S.W.2d 265, 267 (Tex. App.--Austin 1984, no writ); Melton v. Dallas County Child Welfare Unit,
602 S.W.2d 119, 121-22 (Tex. App.--Dallas 1980, no writ). In Melton, the court held that the children's
statements that they wanted to be adopted tended to show whether their mother's conduct had endangered
their emotional well-being and thus fell within the state-of-mind exception. Melton, 602 S.W.2d at 122. 
Similarly, Michelle's and Miguel Jr.'s statements to the counselor in this case tended to show the status of
their emotional well-being, and were admissible under the state-of-mind exception.

 Aguirre complains again of hearsay when Melissa Greer, an investigator in the Department,
related that Michelle informed her that Luis Tellez continued to live in the home even after Ms. Aguirre had
assured the Department Tellez was out. Appellant raised a hearsay objection to this testimony, but did not
specifically object to additional testimony relating the "gross things" that Michelle said Luis did to her, and
describing the black eye and bruised ribs that Vicente suffered when Luis punched him. Likewise Aguirre
did not object to Greer's later testimony that when she attempted to ask Vicente what was going on at
home, "he covered his face, turned towards the wall and was crying and his body was visibly shaking." 

 Rule 703 allows an expert to testify as to the facts or data upon which she bases her
opinion, and those facts or data need not be admissible in evidence if of a type reasonably relied upon by
experts in the particular field. Tex. R. Civ. Evid. 703. "Exclusion is proper only when the court finds that
the danger the jury will improperly use the hearsay outweighs its probative value for explanatory purposes." 
 Decker v. Hatfield, 798 S.W.2d 637, 638 (Tex. App.--Eastland 1990, writ dism'd w.o.j.) (quoting
Goode, Wellborn & Sharlot, Texas Rules of Evidence: Civil & Criminal § 705.3 (Texas Practice 1988)). 
All of Greer's testimony preceded her opinion, as a child protection specialist, that sexual and physical
abuse had occurred and would likely continue in Ms. Aguirre's home. Greer testified that her investigations
typically entailed interviewing anyone with knowledge about the alleged abuse, including the alleged victims,
and that her interviews gleaned facts of a type reasonably relied upon by people in her field in determining
whether abuse had occurred. Counsel for Aguirre did not object to the testimony on the basis that its
danger of improper use outweighed its probative value. Greer's testimony was properly admitted for the
purpose of showing the basis of her expert opinion. In any event, as described above, similar testimony
by Greer was admitted without objection. Thus any error in admitting the objected-to testimony would
have been harmless. Tex. R. App. P. 81(b)(1).

 Next appellant complains about hearsay included in the testimony of Laurie Donovan, Ms.
Aguirre's therapist at the Day Glo treatment program. In describing Ms. Aguirre's inability to acknowledge
that abuse had occurred in her home, and her inability to validate her children's reports of abuse or their
fears, Donovan reported a plea Michelle made to her mother: "Mom, why don't you tell them what
happened? Tell them like I did." Later she reported Miguel, Jr.'s similar plea: "I don't know, Mom, how
to talk to you so that you can say what happened, so that you can understand what went on." Over an
objection on unspecified grounds, the trial court admitted both statements as part of the basis for Donovan's
opinion that Ms. Aguirre's persistently denied that any abuse occurred and lacked the capacity to prevent
future abuse. Like Greer, Donovan was testifying as an expert and the hearsay was admissible as the basis
for her opinion. Tex. R. Civ. Evid. 703. The children's statements testified to by Donovan also would have
been admissible under the state of mind exception, to show the children's frustration with their mother's
apathy toward their situation. 

 Glen Bruxboort was a therapist at the residential treatment center where the older son,
Miguel, Jr. was living. Ms. Aguirre objected to his testimony relating Miguel's statements about what was
going on in his home: "Yes, he both indicated verbally and behaviorally a real sense of frustration, anger,
hopelessness about what was going on at home in terms of his stepfather being physically violent with both
himself, the other members of the family, his Mom; and him trying to do things, but just not able to, you
know, make it stop or make things better." He also repeated Miguel's story that his mother continued to
allow Luis Tellez to live with the family and neglected to protect the family from further abuse. Bruxboort
relayed the information as the basis for his expert opinion that Miguel suffered from depression and post-traumatic stress disorder due to the family violence that he experienced and was unable to prevent in his
home. The trial court did not abuse its discretion in overruling the hearsay objection.

 Dr. Steve Harrelson was an emergency room physician who testified about the injury to
Vicente's arm that required emergency treatment. Aguirre made a hearsay objection to Dr. Harrelson's
remark that hospital records reflect that at the time of admission Vicente said his mother's boyfriend twisted
his arm. A statement made for the purposes of medical diagnosis or treatment is admissible as an exception
to hearsay. Tex. R. Civ. Evid. 803(4). The trial court properly overruled the objection to Harrelson's
testimony as well. 

 In reviewing appellant's hearsay complaints, we find the trial court did not abuse its
discretion in permitting the expert witnesses to relate certain statements made by the children upon which
the witnesses relied in arriving at their expert opinions or statements given for purposes of medical
treatment. In addition, we note that abundant testimony similar to all of the complained-of testimony was
admitted throughout the trial without objection. Any error committed by the trial court in admitting the
testimony could not have been error reasonably calculated to cause or that did cause the rendition of an
improper judgment. See Tex. R. App. P. 81(b)(1). We overrule the first point of error.



Medical or Caseworker Reports

 In point of error four Ms. Aguirre complains that the trial court erred in admitting into
evidence two reports as business records because they did not meet the requirements of rule 902(10). The
first is the hospital record relating to Vicente's broken arm. Rule 803(8) allows the proponent of the
business record to satisfy the requirements of rule 902(10) through live testimony of the custodian or other
qualified witness. Tex. R. Civ. Evid. 803(6); 902(10) (emphasis added). Dr. Harrelson testified that the
hospital records were kept in the ordinary course of the hospital's business and that the treating nurses
prepared this record contemporaneous to the treatment. We hold that Harrelson's live testimony was
sufficient to meet the requirements of admissibility of the hospital record under rule 803(6). 

 The second complained-of report is the Department's documentation of its investigation
of the Aguirre family. Alexander Cruz, an investigator for the Department, also satisfied the requirements
of rule 803(6) by stating that the report of the Department's investigation was prepared contemporaneously
to the investigation in the ordinary course of the Department's business by a person with knowledge of the
events. We overrule the fourth point of error.



Leading Questions and Jury Argument

 In two further points, Ms. Aguirre contends the trial court erred by allowing the
Department to lead certain witnesses and make improper remarks in its closing argument. We first address
the complaint of leading questions in point of error five. Whether to allow leading questions is a matter
resting within the sound discretion of the trial court, and that decision will not be disturbed on appeal absent
a showing of abuse of discretion. Daily v. Wheat, 681 S.W.2d 747 (Tex. App.--Houston [14th Dist.]
1984, writ ref'd n.r.e.); Vera v. State, 709 S.W.2d 681 (Tex. App.--San Antonio 1986, pet. ref'd). We
have reviewed each instance of which appellant complains and find that, although the trial court did permit
counsel to lead some witnesses who were having trouble understanding the questions being asked, its
actions were well within its discretion. We overrule the fifth point of error.

 In point of error three Ms. Aguirre complains that the trial court committed reversible error
by permitting the Department to mention in closing argument that Luis Tellez had been convicted of the
offense of injury to Ms. Aguirre's son. Appellant's objection to mention of Tellez's conviction was sustained
at one point in the proceedings; however, Ms. Aguirre herself testified earlier, without objection, that she
was aware that Mr. Tellez had been found guilty of injury to her son. Although it was improper for the
Department to mention Tellez's criminal conviction, because the fact of the conviction was already before
the jury, the argument was harmless and thus did not constitute reversible error. Tex. R. App. P. 81(b)(1). 
We overrule the third point of error. 



Factual Sufficiency of the Evidence

 Ms. Aguirre also contends that the evidence is factually insufficient to meet the clear and
convincing standard of proof required to terminate her parental relationship. See In re G. M., 596 S.W.2d
846, 847 (Tex. 1980). 

 When reviewing a jury verdict to determine the factual sufficiency of the evidence, we must
consider and weigh all the evidence and should set aside the judgment only if it is so contrary to the
overwhelming weight of the evidence as to be clearly wrong and unjust. Cain v. Bain, 709 S.W.2d 175,
176 (Tex. 1986); In re King's Estate, 244 S.W.2d 660, 661 (Tex. 1951); see also Pool v. Ford Motor
Co., 715 S.W.2d 629 (Tex. 1986). See generally William Powers, Jr. & Jack Ratliff, Another Look at
"No Evidence" and "Insufficient Evidence", 69 Tex. L. Rev. 515 (1991). The clear and convincing
standard of proof required to terminate parental rights does not alter the appellate standard of review. D.
O. v. Texas Dept. of Human Servs., 851 S.W.2d 351, 353 (Tex. App.--Austin 1993, no writ).

 School counselors and principals noted the sexually inappropriate behavior of Michelle,
the repeated signs of physical abuse in Vicente, and the agony that Miguel's sense of guilt and responsibility
caused him when he was unable to prevent Luis Tellez's ongoing abuse of Miguel's siblings and his mother. 
The record is replete with evidence that physical abuse and sexual abuse occurred in the Aguirre home and
that Ms. Aguirre's boyfriend, Luis Tellez, was the perpetrator of the abuse of the children and their mother. 
Furthermore there was evidence that Ms. Aguirre had previously been in an abusive relationship for twelve
years with the children's father, Miguel Aguirre, Sr. Every witness who testified corroborated the
Department's story that even after a year of treatment, Ms. Aguirre was unable to acknowledge any abuse
had occurred. Despite her children's pleas for her to tell what had really happened and do what she
needed to do so they could come home, Ms. Aguirre persisted in saying she wasn't going to judge a person
for something she hadn't seen. 

 The Department first became involved with Aguirre's family in 1989. Subsequent referrals
occurred in 1991, 1992, and 1993, until finally in 1994 the children were removed from the home. After
one year of participating in sessions for battered women and in sessions with her children, who desperately
needed her validation of their reports of abuse, Ms. Aguirre steadfastly refused to believe them. Again and
again she called her children "liars." Although professing her love for her children, she could not express
any empathy for their fears or for her children's need to have her validate their stories of abuse. By her
stubborn refusal to deal with the reality of abuse in their lives, she put her children in the untenable position
of suffering ongoing abuse if they wanted to maintain a relationship with their mother. 

 Every witness who testified corroborated the Department's story that this mother, with a
history of subjecting herself and her children to abusive relationships, had made no progress in learning to
protect her children from future abuse. She lied to the Department about banishing the perpetrator of the
abuse from her home; she testified in his behalf when he was tried for abusing her older son Miguel. She
pressured her children into not revealing the abuse they had suffered, telling them they would be taken away
from her if they told. She showed up at most of her counseling sessions, but never learned to recognize
abuse and never gave her children any reason to trust that she would protect them from recurring abuse. 
Ms. Aguirre's own therapist testified that she had not demonstrated the ability to protect her children and
that the children would be at risk if returned to her care.

 There was no conflicting testimony about the course of action that would serve the best
interest of these children. Ms. Aguirre argues that the children repeatedly expressed their affection for her
and their desire to return home. This is true, and in fact the children's pleas with their mother to tell what
had happened so they could come home are heartrending. Sadly, the children understood better than the
mother what was necessary for their safety and protection. The children's therapists testified that the two
younger children were adoptable and that the possibility of adoption outweighed the benefit of continued
contact with their mother, despite their genuine affection for her. Spurlock v. Texas Dep't of Protective
and Regulatory Servs., 904 S.W.2d 152, 159 (Tex. App.--Austin 1995, no writ).

 There is more than sufficient evidence of specific acts of abuse against these children by
their stepfather and the repeated failure of their mother to protect them from this abuse, and specific
testimony of her inability to protect them from future abuse, to support the jury's decision that it was in the
best interest of the children to terminate Juanita Aguirre's parental rights to her two younger children. 
Holley v. Adams, 544 S.W.2d 367, 372 (Tex. 1976); Tex. Family Code Ann. § 161.001(1)(D & E)
(West 1996); Doria v. Texas Dep't of Human Servs., 747 S.W.2d 953 (Tex. App.--Corpus Christi
1988, no writ). We overrule point of error two.



CONCLUSION


 Finding no error, we affirm the trial court's judgment terminating Ms. Aguirre's parental
rights to her two younger children.



 

 Bea Ann Smith, Justice

Before Justices Aboussie, Kidd and B. A. Smith

Affirmed

Filed: November 20, 1996

Do Not Publish



 there was evidence that Ms. Aguirre had previously been in an abusive relationship for twelve
years with the children's father, Miguel Aguirre, Sr. Every witness who testified corroborated the
Department's story that even after a year of treatment, Ms. Aguirre was unable to acknowledge any abuse
had occurred. Despite her children's pleas for her to tell what had really happened and do what she
needed to do so they could come home, Ms. Aguirre persisted in saying she wasn't going to judge a person
for something she hadn't seen. 

 The Department first became involved with Aguirre's family in 1989. Subsequent referrals
occurred in 1991, 1992, and 1993, until finally in 1994 the children were removed from the home. After
one year of participating in sessions for battered women and in sessions with her children, who desperately
needed her validation of their reports of abuse, Ms. Aguirre steadfastly refused to believe them. Again and
again she called her children "liars." Although professing her love for her children, she could not express
any empathy for their fears or for her children's need to have her validate their stories of abuse. By her
stubborn refusal to deal with the reality of abuse in their lives, she put her children in the untenable position
of suffering ongoing abuse if they wanted to maintain a relationship with their mother. 

 Every witness who testified corroborated the Department's story that this mother, with a
history of subjecting herself and her children to abusive relationships, had made no progress in learning to
protect her children from future abuse. She lied to the Department about banishing the perpetrator of the
abuse from her home; she testified in his behalf when he was tried for abusing her older son Miguel. She
pressured her children into not revealing the abuse they had suffered, telling them they would be taken away
from her if they told. She showed up at most of her counseling sessions, but never learned to recognize
abuse and never gave her children any reason to trust that she would protect them from recurring abuse. 
Ms. Aguirre's own therapist testified that she had not demonstrated the ability to protect her children and
that the children would be at risk if returned to her care.

 There was no conflicting testimony about the course of action that would serve the best
interest of these children. Ms. Aguirre argues that the children repeatedly expressed their affection for her
and their desire to return home. This is true, and in fact the children's pleas with their mother to tell what
had happened so they could come home are heartrending. Sadly, the children understood better than the
mother what was necessary for their safety and protection. The children's therapists testified that the two
younger children were adoptable and that the possibility of adoption outweighed the benefit of continued
contact with their mother, despite their genuine affection for her. Spurlock v. Texas Dep't of Protective
and Regulatory Servs., 904 S.W.2d 152, 159 (Tex. App.--Austin 1995, no writ).

 There is more than sufficient evidence of specific acts of abuse against these children by
their stepfather and the repeated failure of their mother to protect them from this abuse, and specific
testimony of her inability to protect them from future abuse, to support the jury's decision that it was in the
best interest of the children to terminate Juanita Aguirre's parental rights to her two younger children. 
Holley v. Adams, 544 S.W.2d 367, 372 (Tex. 1976); Tex. Family Code Ann. § 161.001(1)(D & E)
(West 1996); Doria v. Texas Dep't of Human Servs., 747 S.W.2d 953 (Tex. App.--Corpus Christi
1988, no writ). We overrule point of error two.



CONCLUSION


 Finding no error, we affirm the trial court's judgment terminating Ms. Aguirre's parental
rights to her two younger children.



 

 Bea Ann Smith, Justice