# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-18-00544-CV

**M. D., Appellant**

**v.**

**Texas Department of Family and Protective Services, Appellee**

### FROM THE DISTRICT COURT OF BELL COUNTY, 146TH JUDICIAL DISTRICT
### NO. 291,167-B, HONORABLE JACK WELDON JONES, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

M.D. appeals from the trial court's order terminating his parent-child relationship with G.D.N.[1] M.D. contends that the evidence is legally and factually insufficient to support the trial court's finding that termination is in the best interest of the child. *See* Tex. Fam. Code § 161.001(b)(2). Because we conclude that the evidence was legally and factually sufficient to support the challenged best interest finding, we affirm the trial court's final order of termination.

---

[1] To protect their privacy, we use initials to refer to the parents and their children. *See* Tex. Fam. Code § 109.002(d); Tex. R. App. P. 9.8.

# BACKGROUND[2]

In March 2017, the Department filed an original petition affecting the parent-child relationship, and the trial court appointed the Department as temporary managing conservator of G.D.N. and his two older half sisters. At that time, G.D.N. was 9 years old. The month before, the Department had received a report after G.D.N. and his two sisters were dropped off at their maternal aunt's house by their mother Y.N. Y.N. has a lengthy history with the Department that involves drug use, mental health issues, and neglectful supervision of her children. The most recent report documented concerns that Y.N. abused marijuana, methamphetamine, and cocaine while her children were present and that the children were homeless and living out of Y.N.'s vehicle, had not showered in 5 days prior to arriving at their aunt's house, and had not attended school in a month.

The court scheduled a show cause hearing for March 2017 and notified the fathers of the three children, including G.D.N.'s father M.D. At that time, M.D. was 43 years old and, along with his 15 year old daughter, lived with his mother, whom he had lived with for most of his life. G.D.N. did not live with M.D., but would stay with his grandmother and M.D. at various times in the past when Y.N. would drop G.D.N. off for visits, potentially for weeks at a time. After the show cause hearing, the court appointed G.D.N.'s maternal aunt as the caregiver of the three children and ordered that the children be placed with her.

---

[2] Although we have considered the entire record, we do not exhaustively detail the facts and procedural history of this case in this memorandum opinion affirming the trial court's termination order, except as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* Tex. R. App. P. 47.1, 47.4 ("If the issues are settled, the court should write a brief memorandum opinion no longer than necessary to advise the parties of the court's decision and the basic reasons for it."); *In re A.B.*, 437 S.W.3d 498, 507 (Tex. 2014) (holding courts of appeals need not detail evidence when affirming termination findings).

After a status review hearing in May 2017, which M.D. attended, the court adopted the Department's service plans, which required M.D. to undergo a psychological evaluation, participate in counseling, submit to random drug testing, and pay child support to the maternal aunt as the relative temporary possessory conservator. The court also ordered M.D. to have supervised visitations with G.D.N. twice a month and permitted M.D. to bring his other 15 year old daughter to the visitations. In August 2017, the Department filed its permanency plan and progress report, which noted that M.D. admitted to using marijuana to self medicate due to a 2009 motorcycle accident, had not submitted to the psychological examination or random drug testing, was not participating in counseling, but was making child support payments. In October 2017, the Department updated the report to show that M.D. had begun counseling and sporadically had submitted to drug testing. After the October 2017 status hearing, which M.D. attended, the court ordered M.D. to submit to a hair follicle drug test that day. In February 2018, the Department filed its final hearing report, which documented that M.D. had been arrested for possession of marijuana in November 2017 and that he did not complete the hair follicle drug test, as required.

In May 2018, an associate judge conducted a hearing and entered a decree terminating the parent-child relationship between the parents and the three children. As to M.D., the associate judge found by clear and convincing evidence that termination was in the best interest of G.D.N. and that the statutory grounds found in subsections (E) and (O) existed for termination of the parent-child relationship. *See* Tex. Fam. Code §§ 161.001(b)(1)(E) (statutory ground for termination when parent has "engaged in conduct and knowingly placed the child with persons who engaged in conduct which endangers the physical and emotional well-being of the child"), 161.001(b)(1)(O) (statutory ground

3

for termination when parent has "failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child").

M.D. requested a de novo hearing, which occurred in June 2018. At the hearing, the trial court heard testimonial evidence from M.D., his mother, the conservatorship caseworker, and G.D.N.'s guardian ad litem. After hearing the evidence, the trial court found statutory grounds for termination under subsections (D), (E), and (O) and concluded that "it is in [G.D.N.'s] best interest that he be given the kind of stability that will come only with, it sounds like from the evidence presented to me, being in the family with his aunt, with his sisters, and go on in the future." The trial court recognized that it sounds like M.D. and his mother "are loving and caring people," but nevertheless noted that the court has to decide what is best for G.D.N. and found that terminating the parent-child relationship is what is best for G.D.N. The trial court signed the decree of termination in July 2018. M.D. appeals from this decree of termination here.

## ANALYSIS

### Standards of Review

The applicable standard of proof is the clear and convincing standard. Tex. Fam. Code § 161.206(a); *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002) (due process requires clear and convincing standard of proof in parental termination cases). The clear and convincing standard is "the measure or degree of proof which will produce in the mind of the trier of fact a firm belief or

conviction as to the truth of the allegations sought to be established." Tex. Fam. Code § 101.007 (defining "clear and convincing evidence"); *In re C.H.*, 89 S.W.3d 17, 23 (Tex. 2002). Although "parental rights are of constitutional magnitude," "it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right." *C.H.*, 89 S.W.3d at 26.

On appeal, M.D. raises legal and factual sufficiency challenges. "The distinction between legal and factual sufficiency when the burden of proof is clear and convincing evidence may be a fine one in some cases, but there is a distinction in how the evidence is reviewed." *J.F.C.*, 96 S.W.3d at 266; *Spurck v. Texas Dep't of Family & Protective Servs.*, 396 S.W.3d 205, 220 (Tex. App.—Austin 2013, no pet.). When reviewing the legal sufficiency of the evidence, we consider all the evidence in the light most favorable to the factfinder's determination and will uphold a finding if a reasonable factfinder could have formed a firm belief or conviction that its finding was true. *See J.F.C.*, 96 S.W.3d at 266; *Spurck*, 396 S.W.3d at 220; *see also In re K.M.L.*, 443 S.W.3d 101, 112 (Tex. 2014). However, "witness credibility issues 'that depend on appearance and demeanor cannot be weighed by the appellate court'" and "even when credibility issues are reflected in the written transcript, the appellate court must defer to the [factfinder's] determinations, at least so long as those determinations are not themselves unreasonable." *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (quoting *Southwestern Bell Tel. Co. v. Garza*, 164 S.W.3d 607, 625 (Tex. 2004)). When reviewing the factual sufficiency of the evidence, we view all the evidence in a neutral light, but assume the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so and disregarded evidence that a reasonable factfinder could have disbelieved or found incredible. *J.F.C.*, 96 S.W.3d at 266; *Spurck*, 396 S.W.3d at 220. We "inquire 'whether the evidence is such that a

factfinder could reasonably form a firm belief or conviction about the truth of the [] allegations,'" giving "due consideration to evidence that the factfinder could reasonably have found to be clear and convincing" and not "supplant[ing] the [factfinder's] judgment with [our] own." *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (quoting *C.H.*, 89 S.W.3d at 25). It is the factfinder "who, having full opportunity to observe witness testimony first-hand, is the sole arbiter when assessing the credibility and demeanor of witnesses." *In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014) (citing *In re J.L.*, 163 S.W.3d 79, 86–87 (Tex. 2005)). "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.* (quoting *J.F.C.*, 96 S.W.3d at 266).

**Best Interest of the Child**

To terminate the parent-child relationship, a court must find by clear and convincing evidence that: (1) the parent has committed one of the enumerated statutory grounds for termination and (2) it is in the child's best interest to terminate the parent's rights. Tex. Fam. Code § 161.001(b); *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). Here, M.D. does not dispute the trial court's determination that statutory grounds for termination exist under subsection (D), (E), or (O). *See* Tex. Fam. Code § 161.001(b)(1)(D), (E), (O). However, M.D. does dispute that it would be in the best interest of the child G.D.N. to terminate the parent-child relationship.

Courts assess the best interest of the child using a non-exhaustive list of factors. *See In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006); *Spurck*, 396 S.W.3d at 222. These factors include (1) the child's wishes, (2) the child's emotional and physical needs now and in the future, (3) the

emotional or physical danger to the child now and in the future, (4) the parenting abilities of the parties seeking custody, (5) programs available to help those parties, (6) plans for the child by the parties seeking custody, (7) the stability of the home or the proposed placement, (8) the acts or omissions of the parent which indicate that the existing parent-child relationship is not proper, and (9) any excuses for the acts or omissions of the parent. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *Spurck*, 396 S.W.3d at 222. The Department need not prove all nine *Holley* factors as a "condition precedent" to termination. *C.H.*, 89 S.W.3d at 27; *Spurck*, 396 S.W.3d at 222. Because no single factor is controlling, the absence of some factors does not bar a finding that termination is in the child's best interest, and in a particular situation the analysis of a single factor may be adequate to support such a finding. *Spurck*, 396 S.W.3d at 222. Further, evidence presented to satisfy the predicate ground findings of committing one or more of the enumerated statutory grounds for termination may also be probative of the child's best interest. *C.H.*, 89 S.W.3d at 27–28.

**Evidence Regarding the Child's Best Interest**

At the de novo hearing, the trial court heard evidence regarding the *Holley* factors. The evidence showed that G.D.N. desires to be adopted by his maternal aunt with whom he has "always lived with . . . on and off." The evidence also shows that G.D.N. is safe and well taken care of in his current placement with his maternal aunt and with his two sisters with whom he is "pretty close." The guardian ad litem testified that the aunt has cared for G.D.N. "[l]ike a mother caring for her child" and desires to adopt G.D.N. and his sisters. The guardian ad litem concluded that G.D.N. is "in a safe, loving, caring environment with his siblings, who all wish to be adopted by the aunt" and that the aunt "wants to adopt them, and I believe that that is in his best interest."

7

The conservatorship caseworker also testified that the aunt desires to adopt G.D.N. and that G.D.N. is excited about the adoption.[3]  The caseworker described poems and pictures G.D.N. and his sisters created for their aunt on Mother's Day and described the relationship as "an interaction of any other children with a mom" and "a healthy relationship."  Accordingly, the caseworker concluded that "relative adoption would be the goal for [G.D.N.] so that he can stay in contact and live with his sisters"[4] and "be in a stable household who can provide for him financially and educationally," which, she testified, could occur only if M.D.'s parental rights are terminated. Although M.D.'s mother—G.D.N.'s grandmother—testified that M.D. loves his children, has helped raise other family members throughout the years, was attentive to their needs, and is really close to his 15 year old daughter, the guardian ad litem testified that G.D.N. never really mentions his dad.

---

[3] In his appellate briefing, M.D. characterizes the caseworker's and the guardian ad litem's testimony as "hearsay."  But M.D. did not object to the guardian ad litem's testimony and thus, even if the testimony was hearsay, the "hearsay evidence may support the trial court's determinations." *L.R. v. Texas Dep't of Family & Protective Servs.*, No. 03-18-00125-CV, 2018 WL 3059959, at *4 (Tex. App.—Austin June 21, 2018, no pet.) (mem. op.) (citing Tex. R. Evid. 802 ("Inadmissible hearsay admitted without objection shall not be denied probative value merely because it is hearsay.")).  M.D. did object to the caseworker's testimony, which the trial court overruled. However, G.D.N.'s statements to the caseworker regarding his excitement about being adopted fall within the state of mind exception to the hearsay rule.  *See, e.g.*, *Aguirre v. Texas Dep't of Protective & Regulatory Servs.*, No. 03-95-00627-CV, 1996 WL 668837, at *2 (Tex. App.—Austin Nov. 20, 1996, writ denied) (not designated for publication) (concluding trial court did not abuse its discretion in overruling hearsay objection and allowing school counselor to testify as to certain statements child made regarding fear of stepfather); *Melton v. Dallas Cty. Child Welfare Unit of Tex. Dep't of Human Res.*, 602 S.W.2d 119, 121 (Tex. App.—Dallas 1980, no writ) (noting that caseworker's testimony regarding "children's statements concerning their desire for adoption" fall within state of mind exception to hearsay rule).

[4] Although G.D.N.'s older sister lives with M.D., the guardian ad litem testified that G.D.N. never mentioned her.

The caseworker instead testified that G.D.N. "only asks me about his grandmother" and "kind of said that she's more of a father than his actual dad."

The guardian ad litem also testified that G.D.N. would like to be adopted by his aunt and remain there, and that he has maintained that thinking and that desire as far as she could tell, even though she has explained to him that if he is adopted he would not have contact with M.D. anymore. After being told that G.D.N. no longer wanted to see M.D., M.D. left a voice message on the conservatorship caseworker's phone saying, "I'm done fighting, I can't fight anymore, I'm stressed, I'm in debt, I'm done. If he wants to be with his aunt, I hope he has a wonderful life."

Nevertheless, M.D. argues here that it is in the best interest of G.D.N. that his parental rights not be terminated because the evidence shows that M.D. "was employed throughout the case, had maintained the same residence throughout the case, had paid child support when ordered while the child was in substitute care, and he expressed a desire to provide for the child at the time of trial." However, M.D. also admitted to being arrested around 18 times since 2008, including twice since the case began in 2017—once for marijuana possession and the other for aggravated assault. In the pending aggravated assault charge, M.D. was accused of aggravated assault in a women's bathroom of a store. M.D. testified that he thought he went in the men's room, but admitted he had a pocket knife with him at that time that was visible in his pocket. His 15 year old daughter was also with him at the store, and M.D. testified that she saw him go into and out of the bathroom. The conservatorship caseworker testified that it is not healthy for a child to be a witness at a father's potential felony assault case.

Although the case for the recent marijuana charge was dismissed for lack of evidence, M.D. admitted that he has smoked marijuana since a 2009 motorcycle accident to mitigate stress and he continues to smoke marijuana "[o]ff and on[.]" Illegal drug use exposes a child to the possibility that the parent may be imprisoned and "a parent's decision to engage in illegal drug use during the pendency of a termination suit, when the parent is at risk of losing a child, may support a finding that the parent engaged in conduct that endangered the child's physical or emotional well-being." *In re A.M.*, 495 S.W.3d 573, 580 (Tex. App.—Houston [1st Dist.] 2016, pet. denied). The conservatorship caseworker also testified that M.D.'s arrest record and drug use is concerning because "he's engaging in or, if not, with people who are involved in criminal activity and drugs, in and out of incarceration, and that's just not a healthy household for [G.D.N]."

Additionally, even though the court ordered M.D. to have supervised visitations with G.D.N. twice a month, M.D. admitted that in the last 16 months while the case was pending he had only visited G.D.N. between one and three times with no more than a total of three hours of contact. Although M.D. claimed it was a "financial difficulty" for him to visit G.D.N., the Department presented evidence that M.D. was able to post a $4,000 bond to get out of jail during that same time period.[5] M.D. also presented evidence that he attended several individual therapy sessions, maintained employment, appears to have not missed child support payments, and attended most of the hearings in this case. Nevertheless, testimony showed that M.D. did not complete his family

---

[5] At the hearing, M.D.'s mother testified that she paid the $4,000 bond. In closing statements, M.D.'s counsel implied that because the money came from M.D.'s mother, it should not be relevant to whether M.D. had the financial ability to visit G.D.N. But M.D.'s mother also testified that she is able to financially support M.D. for "something that was necessary," and has done so in the past, as she did to get M.D. "out of jail."

service plan, his drug testing was sporadic, and he missed therapy sessions.[6] Although M.D. testified that he did take two drug tests that were negative where marijuana would typically have shown up if used within 30 days, he also refused to take a hair follicle drug test ordered by the court. He explained that he refused to take the test because "I had been done with y'all running me around," "I'm running here and there, I'm doing all of this, and I'm losing money," and "I lost my benefits, I've lost a lot of things, and I owe a lot of people money."

The trial court heard evidence that M.D. loves his son and that he completed some of his required family service plan. Nevertheless, viewing the evidence in the light most favorable to the best interest finding, we conclude that the trial court could reasonably have formed a firm belief or conviction that terminating the parental rights of M.D. was in the best interest of G.D.N. *See* Tex. Fam. Code § 161.001(b)(2); *J.F.C.*, 96 S.W.3d at 266. We also conclude that the trial court could have reasonably resolved disputed evidence in favor of its finding and that any disputed evidence is not so significant that the court could not reasonably have formed a firm belief or conviction that its finding that the termination of M.D.'s parental rights was in G.D.N.'s best interests was true. *See J.F.C.*, 96 S.W.3d at 266. Accordingly, recognizing that the trial court is the sole arbiter of witness credibility, we must give due deference to the trial court's factfindings and not supplant its judgment with our own. *See H.R.M.*, 209 S.W.3d at 108. Thus, we conclude that the evidence was legally and factually sufficient to support the trial court's best interest finding.

---

[6] M.D. also never did the court ordered psychological test, but at the hearing there was some dispute as to whether the service was properly set up and information was properly passed along.

## CONCLUSION

Because we conclude that the evidence was legally and factually sufficient, we affirm the trial court's final order of termination.

_____

Melissa Goodwin, Justice

Before Justices Puryear, Goodwin, and Bourland

Affirmed

Filed:   October 31, 2018