**In the Interest of J.N.R., a Child.**

No. 01–97–01036–CV.

Court of Appeals· of Texas,
Houston (1st Dist.).

July 16, 1998.

Rehearing Overruled Aug. 31, 1998.

Kyle B. Johnson, Houston, for Appellants.

Patricia Lee Flenniken, Lisa S. Rice, Houston, for Appellees.

Before O'CONNOR, TAFT, and JACKSON B. SMITH, Jr.,* JJ.

## OPINION

JACKSON B. SMITH, Jr., Justice.

The Texas Department of Protective and Regulatory Services brought this suit to terminate the parental rights of Nathaniel Jones, III to his son J.N.R. This is an appeal from the trial court's decree of an involuntary termination of Jones' parental rights.

In two points of error, Jones challenges the legal and factual sufficiency of the evidence to support the termination of his parental relationship with J.N.R.

J.N.R. was born in September 1993. In January 1994, Harris County Children's Protective Services ("CPS") received a referral of abandonment and medical neglect of J.N.R., who had been hospitalized since birth and was in need of surgery. J.N.R.'s biological mother, Tamika Roland, had not visited J.N.R. since December 1993. Because attempts at contacting Roland had been unsuccessful, J.N.R.'s biological father was unknown at the time, and because there were no relatives to give consent to J.N.R.'s surgery, CPS took emergency possession of J.N.R.

On January 20, 1994, CPS filed a petition to terminate Tamika's parental relationship with J.N.R and alleged J.N.R.'s biological father was unknown. In June and July of 1994, CPS was appointed J.N.R.'s temporary managing conservator,[1] and J.N.R. was placed in a therapeutic foster home.

On July 27, 1994, CPS received information that Jones, J.N.R.'s biological father, was incarcerated—and had been since April of 1993.[2] Before his incarceration, Jones had not known Roland was pregnant with his child. In August 1994, Jones telephoned CPS three times regarding J.N.R. to request access to J.N.R.'s medical records and to request that photographs of J.N.R. be sent to him. Jones also contacted CPS in September of 1994.

In October 1994, Jones was served with a second amended petition to terminate the parent-child relationship. According to Kathy Whipple, a caseworker for the Texas Department of Protective and Regulatory Services ("TDPRS"), Jones talked to the caseworker who was assigned to the case

---

* The Honorable Jackson B. Smith, Jr., retired Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

1. In January of 1996, the Texas Department of Protective and Regulatory Services replaced CPS as J.N.R.'s temporary managing conservator.

2. Clinton L. Smith, a United States probation officer for the Southern District of Texas, testified that Jones had been sentenced to the federal penitentiary on December 10, 1993, for conspiracy to possess counterfeit securities. According to Smith, the sentence was for 11 months in a federal prison followed by a three-year term of parole. A letter sent by Jones to the trial court projected Jones' release date from the federal prison was December 30, 1995.

about the petition, and the caseworker indicated it was a mistake. Notwithstanding this information, Jones filed an answer in the form of a letter indicating his concern for the well being of J.N.R. and attached an executed statement of paternity.

Jones continued to make monthly telephonic inquiries about J.N.R in November of 1994, in January of 1995 through October of 1995, and in December of 1995. He also sent Whipple a letter indicating that he was not able to contact her during November 1995 because of limited phone access. In one phone conversation, Jones requested materials on parenting, and such materials were mailed to him. In another conversation, Jones requested a recent photograph of J.N.R.

Jones was released from prison on February 5, 1996. The next day, Jones telephoned Whipple. According to Whipple, Jones became an active parent in J.N.R.'s life from February of 1996 through July 1996. Whipple received reports from J.N.R.'s foster family that Jones' visits with J.N.R. were going well. Jones visited J.N.R. as scheduled, unless he had a transportation problem. At some point, Jones' scheduled visits increased to unsupervised four-hour visits every other Sunday.

In March of 1996, Whipple and Jones agreed to and signed a family service plan, in which the long-range goal was to return J.N.R. to Jones. According to the plan, Jones had already secured a job and a place to live, but the plan also required him to agree to stay out of jail, participate in his parole tasks, develop his relationship with J.N.R., and maintain his employment.

In early July 1996, Whipple filed a report for judicial review of placement, in which she stated the permanent plan was to place J.N.R. with his father once Jones could demonstrate the ability to care for J.N.R. The report also stated that (1) Jones had agreed to participate in parenting classes, (2) had secured a stable job and a safe home environment, (3) had reviewed his son's medical records, and (4) had attended his son's appointments with the doctor. However, Whipple recommended that, for the time being, J.N.R. continue his current placement and that Jones continue to work toward providing a safe environment.

During the termination hearing, Whipple testified that although Jones participated in parenting classes, his progress notes in therapy were very inconsistent and he did not show up for some of his scheduled drug tests. She also testified that Jones was arrested on July 4, 1996, for disorderly conduct and arrested again on July 28, 1996. Smith, Jones' probation officer, testified that the arrest in Harris County on July 28 was for passing $20 counterfeit bills. In addition, there was evidence that Jones was arrested for resisting an arrest on July 29, 1996.

In her report for judicial review of placement dated December of 1996, Whipple noted that Jones had been incarcerated in July. She further noted that although Jones had agreed to participate in parenting classes and to obtain a safe home environment, he had not completed these tasks. Whipple recommended that Jones' parental rights be terminated.

Upon being released on bail in December of 1996, Jones asked to see J.N.R. Whipple refused to allow Jones to visit J.N.R.. According to Smith, Jones was arrested in February of 1997 for passing a $20 counterfeit bill in Fairfield, Texas. At the time of the termination hearing, Jones was awaiting trial on federal charges in Waco for this last offense.[3]

After hearing all the evidence in May 1997, the trial court ordered the termination of Jones' parental rights on the grounds that it was in J.N.R.'s best interests and that (1)

3. At the time of the termination hearing, Jones had not yet been convicted for the passing of the counterfeit bill in the Western District of Texas. Attached to the TDPRS' brief is a facsimile of a certified copy of the judgment sentencing Jones to 46 months in a federal prison for that offense. We cannot consider matters outside the appellate record, which consists of the clerk's record and the reporter's record. *See Carlisle v. Philip Morris, Inc.,* 805 S.W.2d 498, 501 (Tex.App.—Austin 1991, writ denied); *see also* Tex.R.App. P. 34.1. Material outside the record that is improperly attached to a party's brief may be stricken. *Carlisle,* 805 S.W.2d at 501. However, in this case, Jones did not object to TDPRS' attachment or move to strike it.

Jones voluntarily left J.N.R. in the possession of another without providing adequate support and remained away for a period of at least six months; (2) Jones engaged in conduct which endangered the physical or emotional well being of J.N.R.; (3) Jones constructively abandoned J.N.R., who has been under the managing conservatorship of TDPRS for not less than one year, and Jones did not visit J.N.R. or maintain contact with him and had demonstrated an inability to provide J.N.R. with a safe environment.

■ The termination of parental rights involves fundamental constitutional rights. *Stanley v. Illinois,* 405 U.S. 645, 651, 92 S.Ct. 1208, 1212–13, 31 L.Ed.2d 551 (1972); *see also Holick v. Smith,* 685 S.W.2d 18, 20 (Tex.1985). Therefore, evidence supporting the findings to terminate parental rights must be clear and convincing, not just preponderate. *In the Interest of G.M.,* 596 S.W.2d 846, 847 (Tex.1980); *Harris v. Herbers,* 838 S.W.2d 938, 941 (Tex.App.—Houston [1st Dist.] 1992, no writ). The clear and convincing standard of proof is intentionally placed on the party seeking the termination of the parental rights, so as to create a higher burden to fulfill, because of the severity and permanence of the termination of the parent-child relationship. *Spurlock v. Texas Dep't of Protective & Regulatory Servs.,* 904 S.W.2d 152, 155 (Tex.App.—Austin 1995, writ denied); *Harris,* 838 S.W.2d at 941. This standard requires more proof than the preponderance of the evidence standard in civil cases, but less than the reasonable doubt standard in criminal cases. *G.M.,* 596 S.W.2d at 847; *Harris,* 838 S.W.2d at 941. The clear and convincing standard is the degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be proved. *G.M.,* 596 S.W.2d at 847; *Harris,* 838 S.W.2d at 941.

■ This proceeding was instigated under the provisions of section 161.001 of the Texas Family Code. That section sets forth one method by which a court may involuntarily terminate the parent-child relationship. TEX. FAM.CODE ANN. § 161.001 (Vernon 1996).[4] Under this section, a court may order the termination of the parent-child relationship if the court finds, by clear and convincing evidence, that: (1) one or more of the acts enumerated in section 161.001(1) was committed; and (2) termination is in the best interest of the child. *See Richardson v. Green,* 677 S.W.2d 497, 499 (Tex.1984). Section 161.001 states in part:

> The court may order termination of the parent-child relationship if the court finds by clear and convincing evidence:
>
> (1) that the parent has:
>
> . . . .
>
> (C) voluntarily left the child alone or in the possession of another without providing adequate support of the child and remained away for a period of at least six months;
>
> . . . .
>
> (E) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child;
>
> . . . .
>
> (N) constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Department of Protective and Regulatory Services or an authorized agency for not less than one year, and:
>
>> (i) the department or authorized agency has made reasonable efforts to return the child to the parent;
>>
>> (ii) the parent has not visited or maintained contact with the child; and

---

4. Effective September 1, 1995, the Legislature re-codified the Family Code by reenacting title 2 and adding title 5. Act of Apr. 6, 1995, 74th Leg., R.S., ch. 20, § 1, 1995 Tex. Gen. Laws 113, 113. Former section 15.02 was reenacted as TEX. FAM CODE ANN. § 161.001 (Vernon 1996). Act of Apr. 6, 1995, 74th Leg., R.S., ch. 20, § 1, sec. 161.001, 1995 Tex. Gen. Laws 113, 212, *amended by* Act of May 24, 1995, 74th Leg., R.S., ch. 709, § 1, 1995 Tex. Gen. Laws 3745, 3745 *amended by* Act of May 26, 1995, 74th Leg., R.S., ch. 751, § 65, 1995 Tex. Gen. Laws 3888, 3910. Section 161.001 applies to a pending suit affecting the parent-child relationship without regard to whether the suit was commenced before, on, or after the effective date of the amending Act. Act of May 26, 1995, 74th Leg., R.S., ch. 751, § 129, 1995 Tex. Gen. Laws 3888, 3933.

(iii) the parent has demonstrated an inability to provide the child with a safe environment; and

(2) that termination is in the best interest of the child.

TEX. FAM.CODE ANN. § 161.001(1)(C), (E), (N), (2) (Vernon 1996).

In point of error one, Jones contends the evidence is legally insufficient to support the termination of his parental rights. On appeal, in evaluating the legal sufficiency of the evidence supporting a trial court's decision to terminate parental rights, the standard of review is not affected by the heightened burden of proof required in the trial court. *See Edwards v. Texas Dep't of Protective and Regulatory Servs.*, 946 S.W.2d 130, 137 (Tex.App.—El Paso 1997, no writ). That is, we consider only the evidence and inferences tending to support the fact finding, and we disregard all contrary evidence and inferences. *See Leitch v. Hornsby*, 935 S.W.2d 114, 118 (Tex.1996); *Edwards*, 946 S.W.2d at 137; *In the Interest of H.C. & S.C.*, 942 S.W.2d 661, 664 (Tex.App.—San Antonio 1997, no writ). If any evidence of probative force exists to support the finding, we will uphold the decision. *Edwards*, 946 S.W.2d at 137.

The evidence in this case shows that Jones continued to engage in conduct that would endanger the emotional well being of J.N.R. "Endanger" means more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment. *Texas Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex.1987). It means to expose to loss or injury or to jeopardize. *Id.* Mere imprisonment will not, standing alone, constitute engaging in conduct that endangers the physical or emotional well-being of the child. *Boyd*, 727 S.W.2d at 533; *Harris*, 838 S.W.2d at 942. However, if all the evidence, including imprisonment shows a course of conduct that has the effect of endangering the physical or emotional well being of the child, a finding under section 161.001(1)(E) is supportable. *See Boyd*, 727 S.W.2d at 533–34; *Harris*, 838 S.W.2d at 942. If the imprisonment of the parent displays a voluntary, deliberate, and conscious course of conduct, it qualifies as conduct that endangers the emotional well being of the child. *Harris*, 838 S.W.2d at 942. The conduct need not be directed toward the child or cause the child physical injury to constitute conduct that endangers the emotional well being of the child. *Allred v. Harris County Child Welfare Unit*, 615 S.W.2d 803, 806 (Tex.Civ.App.—Houston [1st Dist.] 1980, no writ).

In this case, there is evidence that after Jones was released on parole in February 1996, he was arrested on three occasions. On one of those occasions, Jones was arrested for passing a counterfeit bill and jailed from July 1996, until December 1996. After being released from jail on bail, he again was arrested in February of 1997 for passing a counterfeit bill in Fairfield, Texas. At the time of this last arrest, he was outside the area to which he was restricted under the terms of his parole. As a result of these arrests, Smith testified that he was seeking a revocation of Jones' parole. Thus, the record indicates that even after knowing his parental rights were in jeopardy, Jones continued to engage in criminal activity that resulted in his being jailed.

The record also indicates that such termination is in the best interests of J.N.R. Some of the factors that a court may consider in ascertaining the best interest of the child include (1) the emotional and physical needs of the child now and in the future and (2) the plans for the child by the individual seeking custody. *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex.1976); *Allred*, 615 S.W.2d at 806–807. Whipple testified that J.N.R. has a number of problems, including attention deficit hyperactivity disorder, violent tantrums, walking around in the middle of the night, and bed-wetting, all of which require constant adult supervision. She further testified that if Jones' rights were not terminated and Jones would be in and out of J.N.R.'s life due to later arrests, J.N.R.'s behavior would be disturbed.

We conclude that Jones' multiple arrests, jail time, and violation of his parole demonstrate a conscious course of conduct that supports the trial court's decision that Jones engaged in conduct that endangers the emo-

tional well being of J.N.R. We further conclude the evidence was legally sufficient to support such a finding as well as the finding that termination of Jones' parental rights was in the best interests of J.N.R.

We overrule point of error one.

 In point of error two, Jones contends the evidence is factually insufficient to support the termination of his parental rights. Section 161.001 of the Family Code requires that the termination of the parent-child relationship be by clear and convincing evidence. The Texas Supreme Court has stated the requirement of clear and convincing evidence is merely another method of stating that a cause of action must be supported by factually sufficient evidence. *Meadows v. Green,* 524 S.W.2d 509, 510 (Tex. 1975) ("In Texas there are but two standards by which evidence is reviewed: factual sufficiency and legal sufficiency."). In this case, we apply the traditional factual sufficiency standard of review: TDPRS must have proved its allegations by clear and convincing evidence, and we will set aside the judgment only if the evidence is so weak or the finding so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex.1986); *Hollander v. Capon,* 853 S.W.2d 723, 726 (Tex.App.—Houston [1st Dist.] 1993, writ denied).[5]

Jones claims there is substantial evidence that he had no intention of abandoning his son. Jones points to evidence of his visitation of J.N.R., his participation in parenting classes, and TDPRS' initial intention to place J.N.R. with Jones. In this connection and in addition to the facts set forth in point of error one, the evidence shows that Jones' visitation of J.N.R. and his participation in parenting classes were interrupted by his arrest in July of 1996 for passing a counterfeit bill. Whipple testified that although Jones had agreed to participate in parenting classes and to secure a safe home environment, he did not complete these tasks. In fact, after Jones had been arrested in July of 1996 and incarcerated for five months, Whipple recommended that Jones' parental rights be terminated. Knowing that his parental rights and his parole were in jeopardy, Jones once again passed a counterfeit bill in February of 1997, after which he was arrested. Jones' consistent inability to avoid criminal activity implies a conscious disregard for Jones' parental responsibilities and is factually sufficient to support a finding that Jones engaged in conduct that endangers the emotional well being of J.N.R..

 Further, there is factually sufficient evidence that termination of Jones' parental rights would be in J.N.R.'s best interests. Whipple and Julie Smalling, a supervisor at the foster home where J.N.R. lives, both testified that J.N.R. has special needs due to his attention deficit hyperactivity disorder, tantrums, and sleeping problems. Smalling testified that Jones did not demonstrate an ability to meet these special needs or to provide a stable home. Whipple testified that Jones' inconsistent presence in J.N.R's life would disturb J.N.R.'s behavior and that it would be in J.N.R.'s interests to be adopted into a stable home. Smalling also testified that it would be in J.N.R.'s best

---

**5.** The courts of appeals are split as to the standard of review to be applied when reviewing the factual sufficiency of a finding made on the basis of clear and convincing proof. Some courts, including this Court, have applied a heightened standard of review, requiring a finding that the trier of fact reasonably could have found the disputed fact was highly probable. *See, e.g., Ybarra v. Texas Dep't of Human Servs.,* 869 S.W.2d 574, 580 (Tex.App.—Corpus Christi 1993, no writ); *Harris,* 838 S.W.2d at 941; *Neal v. Texas Dep't of Human Servs.,* 814 S.W.2d 216, 222 (Tex.App.—San Antonio 1991, writ denied); *Williams v. Texas Dep't of Human Servs.,* 788 S.W.2d 922, 926 & n. 4 (Tex.App.—Houston [1st Dist.] 1990, no writ).

Other courts have applied the standard of review used in other civil cases, examining all the evidence and reversing a trial court's decision only if it is so against the great weight and preponderance of the evidence as to be clearly unjust. *See, e.g., In the Interest of J. J.,* 911 S.W.2d 437, 439–40 (Tex.App.—Texarkana 1995, writ denied); *Spurlock,* 904 S.W.2d at 156–57; *Oadra v. Stegall,* 871 S.W.2d 882, 892 (Tex.App.—Houston [14th Dist.] 1994, no writ).

We overrule our opinions in *Harris v. Herbers* and *Williams v. Texas Dep't of Human Servs.* to the extent they conflict with *Meadows v. Green* and this opinion.

interests that Jones' parental rights be terminated.

We overrule point of error two.

We hold that the evidence was legally and factually sufficient to support the trial court's finding that Jones' course of criminal conduct endangers J.N.R.'s emotional well being and is in the best interest of J.N.R. We need not determine whether the trial court's other findings in support of the termination of Jones' parental rights were also sufficient.

The judgment of the trial court is affirmed.

On en banc consideration, the majority of the Court voted to overrule *Williams v. Texas Dep't of Human Servs.*, 788 S.W.2d 922 (Tex.App.—Houston [1st Dist.] 1990, no writ) and *Harris v. Herbers*, 838 S.W.2d 938 (Tex.App.—Houston [1st Dist.] 1992, no writ).