.
NO. 07-01-0377-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



SEPTEMBER 19, 2001



______________________________




IN RE TRINITY UNIVERSAL INSURANCE COMPANY, RELATOR




_________________________________




ORDER ON RELATOR'S


SECOND MOTION FOR EMERGENCY STAY






_______________________________




Before BOYD, C.J., and REAVIS and JOHNSON, JJ.



 Pending before this Court is a petition for writ of mandamus filed by Trinity
Insurance Company, relator, and relator's second motion for emergency stay. By its
motion, relator requests that the trial of the underlying action now set for trial on
September 24, 2001, be stayed pending disposition by this Court of the petition for writ of
mandamus filed September 17, 2001.

 Concluding that the motion for an emergency stay should be granted pending this
Court's action on the petition for writ of mandamus, it is ordered that trial of cause number
31,677, pending in the 31st Judicial District Court of Gray County, entitled Lilith Brainard,
Sally Brainard Wicker, E. Swasey Brainard, II, Amy Brainard, Berklee Brainard Clements,
Sena Brainard, and the Estate of Edward H. Brainard, II v. Premier Well Service, Inc., et
al, is stayed pending further order of this Court. 

 It is so ordered.

 Per Curiam

Do not publish. 



r several days. On her release from the hospital August 9, she was
taken into the possession of the Texas Department of Protective and Family Services.

 On August 12, 2002, the department filed an original petition for protection of the
child and seeking conservatorship. A full adversary hearing was held August 22, 2002, and
the department was appointed temporary managing conservator of the child. In October
of 2003 the department amended its original petition to seek termination of parental rights
of Carter and Dale, if reunification of the child with the parents could not be achieved. On
December 22, 2003, a final hearing was held and neither parent appeared. A judgment
was entered terminating Carter's and Dale's parental rights. Both Carter and Dale filed
motions for a new trial alleging they did not receive notice of the final hearing. The motions
for new trial were granted and another final hearing was held on February 13, 2004, at
which both parents appeared represented by counsel. Following the non-jury trial, a
judgment was entered terminating the rights of both parents. The department was named
managing conservator of the child. Both Carter and Dale filed timely notices of appeal. 


Issues

 Carter and Dale each present two issues, that the evidence presented at trial was
legally insufficient and factually insufficient to support the judgment of termination under
Section 161.001. (1) They also challenge the court's finding that termination of their parental
rights was in the best interest of the child. The judgment may be affirmed if it is supported
by evidence sufficient to establish that one of the grounds listed in Section 161.001(1)
exists and that termination is in the best interest of the child as required by Section
161.001(2). In re A.V., 113 S.W.3d 355, 362 (Tex. 2003); In re P.E.W., 105 S.W.3d 771,
777 (Tex.App.-Amarillo 2003, no pet.).

 The trial court found that appellants knowingly placed or allowed the child to remain
in conditions or surroundings which endangered the physical or emotional well-being of the
child, Section 161.001(1)(D); that appellants engaged in conduct or knowingly placed the
child with persons who engaged in conduct that endangered the physical or emotional well-being of the child, Section 161.001(1)(E); and that termination of parental rights between
appellants and their child was in the best interest of the child, Section 161.001(2). 
Because we find the evidence sufficient to support the findings under Section
161.001(1)(E) and Section 161.001(2), we consider only the evidence addressing those
grounds. 


Law Findings under Section 161.001 must be based on clear and convincing evidence. 
Clear and convincing evidence is the measure or degree of proof that will produce in the
mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought
to be established. Tex. Fam. Code Ann. § 101.007. The clear and convincing evidence
burden of proof requires a higher level of appellate scrutiny in reviewing the legal and
factual sufficiency of the evidence. In re J.F.C., 96 S.W.3d 256 (Tex. 2002); In re C.H., 89
S.W.3d 17, 23 (Tex. 2002).

 In reviewing legal sufficiency, we look at all the evidence, in the light most favorable
to the judgment, to determine if the trier of fact could reasonably have formed a firm belief
or conviction that grounds existed for termination under the Family Code. Tex. Fam. Code
Ann. §§ 161.001, 161.206(a) (Vernon 2002 & Supp. 2004); In re J.F.C., 96 S.W.3d at 265-66. In review of a factual sufficiency challenge we must consider all the evidence the fact
finder could reasonably have found to be clear and convincing, determining whether, on
the entire record, the fact finder could reasonably form a firm belief or conviction of the
truth of the department's allegations. See In re J.F.C., 96 S.W.3d at 266; In re C.H., 89
S.W.3d at 25, 27-29. In so doing, we consider whether disputed evidence is such that a
reasonable fact finder could have resolved it in favor of its finding. If, in light of the entire
record, disputed evidence that a reasonable fact finder could not have resolved in favor of
the finding is so significant as to prevent a fact finder reasonably from forming a firm belief
or conviction of the truth of the finding, then the evidence is factually insufficient. See In
re J.F.C., 96 S.W.3d at 266. 

 In the context of our review of the evidence that appellants' conduct endangered the
child's physical or emotional well-being, to "endanger" means to expose to loss or injury;
to jeopardize. Texas Dep't of Human Servs. v. Boyd, 727 S.W.2d 531, 533 (Tex. 1987). 
Although "endanger" means more than a threat of metaphysical injury or the possible ill
effects of a less-than-ideal family environment, it is not necessary that the conduct be
directed at the child or that the child must actually suffer injury. In re M.C., 917 S.W.2d 268,
269 (Tex. 1996). A danger to the child's well-being may be inferred from parental
misconduct. Boyd, 727 S.W.2d at 533. An endangerment inquiry under Section
161.001(1)(E) focuses on the conduct of the parent, including the parent's actions or
omissions or failures to act. See In re D.T., 34 S.W.3d 625, 634 (Tex.App.-Fort Worth
2000, pet. denied).

Endangerment - Carter

 We first consider the legal sufficiency of the evidence Carter engaged in conduct
that endangered S.M.L.D.'s physical or emotional well-being. On appeal Carter argues
that the only evidence before the trial court bearing on that issue concerned her conduct
after the child was removed from her possession. She argues that she could not have
endangered the child physically or emotionally during the limited interaction she was
permitted with the infant after her birth. Carter's argument ignores the effect of her drug
use on her unborn child, and case law establishing that a mother's use of drugs during
pregnancy may be conduct which endangers the physical and emotional well-being of the
child. In re W.A.B., 979 S.W.2d 804, 807 (Tex.App.-Houston [14th Dist.] 1998, pet.
denied); see In re U.P., 105 S.W.3d 222, 234 (Tex.App.-Houston [14th Dist.] 2003, pet.
denied); Dupree v. Texas Dep't Protective and Regulatory Servs., 907 S.W.2d 81, 84
(Tex.App.-Dallas 1995, no writ).

 Carter admitted that she used cocaine two days before her child's birth, even though
she knew it could be dangerous to the unborn child. A department caseworker testified
that immediately after birth, the child was placed in a neonatal intensive care unit for over
a week, suffering withdrawal symptoms from exposure both to cocaine and to
methamphetamines. Evidence of Carter's drug use during pregnancy, and the distress
suffered by the child after delivery, demonstrates how Carter harmed the physical well-being of the child. Carter's ingestion of drugs while pregnant did more than expose the
child to injury; see Boyd, 727 S.W.2d at 533, it brought about actual physical harm to the
infant. 

 Termination under Section 161.001(1)(E) typically requires evidence of more than
a single act or omission. In re D.M., 58 S.W.3d 801, 812 (Tex.App.-Fort Worth 2001, no
pet.); In re J.N.R., 982 S.W.2d 137, 142 (Tex.App.-Houston [1st Dist.] 1998, no pet.). In
determining whether a parent has engaged in a course of conduct endangering a child, we
may look at the conduct both before and after the child's birth. In re D.M., 58 S.W.3d at
812; In re M.J.M.L., 31 S.W.3d 347, 351 (Tex.App.-San Antonio 2000, pet. denied); Avery
v. State, 963 S.W.2d 550, 553 (Tex.App.-Houston [1st Dist.] 1997, no writ). The evidence
is that Carter's ingestion of cocaine before the birth of her child was not an isolated event,
but was part of a course of conduct of the use of illegal drugs. See In re R.W., 129 S.W.3d
732, 739 (Tex.App.-Fort Worth 2004, pet. denied) (court may consider drug use and its
effect on parent's life and ability to parent as contributing to endangering course of
conduct); In re U.P., 105 S.W.3d at 234; Dupree, 907 S.W.2d at 84. Carter testified she
used marijuana during the first three months of her pregnancy. Her drug use continued
after the child was removed from her care, in the face of periodic drug tests that placed her
relationship with her child in jeopardy. See In re J.N.R., 982 S.W.2d at 142 (considering
conduct jeopardizing parental rights as part of course of conduct endangering well-being
of child). The department, as part of her service plan, required Carter to submit to random
drug tests. The caseworker testified she did not submit to all the testing required by her
service plan. Nevertheless, testimony indicated she tested positive for drugs in June, July
and December of 2003. (2) The record contains sufficient clear and convincing evidence for
the court to have reasonably formed a firm belief or conviction that Carter engaged in
conduct that endangered the physical and emotional well-being of her child, and is thus
legally sufficient to support that finding. Tex. Fam. Code Ann. § 161.001(1)(E). 

 Considering the entire record, the evidence also is factually sufficient to support the
finding. The facts of Carter's cocaine use prior to S.M.L.D.'s birth and of its effect on her
child are not disputed. There was conflicting testimony at trial concerning the number of
Carter's positive drug tests during the months before trial, but the conflict in evidence is
one the court could resolve in favor of its finding. See In re J.F.C., 96 S.W.3d at 266.Endangerment - Dale

 We apply the same analysis to the court's finding that Dale engaged in conduct or
knowingly placed S.M.L.D. with persons who engaged in conduct that endangered the
physical or emotional well-being of the child. Dale argues he never took any actions to
harm the child. He contends his rights were terminated only because he had been
incarcerated for the majority of the child's life. Like Carter, Dale ignores the danger to
S.M.L.D. from Carter's use of drugs two days before her birth. In considering whether Dale
had engaged in endangering conduct, the court was entitled to take into account his role
in the presence of cocaine in the child's body at birth. See Dupree, 907 S.W.2d at 85. At
trial, Dale acknowledged providing Carter the cocaine she smoked before S.M.L.D.'s birth. 

 The court also could consider the effect of Dale's drug use on his life and ability to
parent S.M.L.D. See In re R.W., 129 S.W.3d 732, 739. The effect of drug use on Dale's
life was illustrated during his testimony by his agreement with the attorney ad litem that,
when he gave Carter a "hit" off the crack cocaine he was smoking, he was "just too high"
to think about the consequences. Dale also acknowledged at trial his addiction to drugs.
Although Dale testified to a desire to abstain from drugs, and to his participation in a
twelve-step recovery program required by the department, he acknowledged continued
drug use. 

 Dale attended trial, but was incarcerated at that time, following revocation of his
parole. He testified he would remain incarcerated for nine to eighteen months. He also
testified his drug use was a cause of the revocation. (3) 

 A parent's mere imprisonment is not conduct that endangers the emotional or
physical well-being of a child, but it is a factor the court could consider on the issue of
endangerment. See Boyd, 727 S.W.2d at 533-34; In re R.W., 129 S.W.3d at 743; In re
D.T., 34 S.W.3d at 638.; In re J.N.R., 982 S.W.2d at 142. Dale's imprisonment was at
least partially the result of his course of conduct of using illegal drugs and, coupled with the
other undisputed evidence of that course of conduct and its effect on the well-being of the
child, provides both legally and factually sufficient evidence that he engaged in conduct
that endangered S.M.L.D.'s physical and emotional well-being. See In re R.W., 129
S.W.3d at 739; Dupree at 84. 

Best Interest of Child

 We next address whether the department established that termination of Carter's
parental rights was in the best interest of the child, overcoming the strong presumption that
the best interest of a child is served by keeping custody in the natural parent. See, e.g.,
In re D.M., 58 S.W.3d at 814. Holley v. Adams, 544 S.W.2d 367 (Tex. 1976), sets out
factors that may bear on the question of best interest, including desires of the child;
emotional and physical needs of the child now and in the future; the emotional and physical
danger to the child now and in the future; parental abilities of the individuals seeking
custody; programs available to assist these individuals to promote the best interest of the
child; plans for the child by these individuals or by the agency seeking custody; the stability
of the home or proposed placement; the acts or omissions of the parent which may
indicate that the existing parent-child relationship is not a proper one; and any excuse for
the acts or omissions of the parent. Id. at 371-72. The Holley list is not exhaustive,
though, and evidence on each factor is not required to support a finding that termination
is in the child's best interest, particularly if there is undisputed evidence that the parental
relationship endangered the safety of the child. In re C.H., 89 S.W.3d at 27. 

 The evidence offered to prove grounds for termination is also relevant in determining
if termination is in the child's best interest. In re C.H., 89 S.W.3d at 28. We have stated
our conclusion that Carter's course of conduct involving the use of drugs posed a danger
to her child. 

 The evidence concerning Carter's willingness and ability to address her drug usage
was conflicting. Testimony indicated that the department referred Carter to Ms. Sorrells,
a therapist, with whom she met once a week for approximately eleven months, beginning
sometime after the birth of S.M.L.D. Even though Sorrells was designated by the
department to treat Carter, at some point the department concluded she was not making
progress with Sorrells and transferred Carter to a new therapist. On Carter's counsel's
cross-examination of department caseworker Rachel Buckalew, an excerpt from a letter
written by Sorrells was read into the record. In the letter, Sorrells stated that Carter
admitted her drug use and had developed a plan to prevent relapse into drug use. Sorrells
reported that Carter consistently attended counseling sessions and when CPS determined
she should see a new therapist, Carter wanted to continue with Sorrells at her own
expense. 

 The letter indicated Carter was willing to undergo more intense treatment, such as
inpatient rehabilitation, if needed. Sorrells stated that Carter was beginning to address her
problems when a change in therapist was ordered by the department. Buckalew's
testimony controverted the conclusions stated in Sorrells' letter. Buckalew testified that
when she called Sorrells to complete a report to the court, she "stated everything
differently" than what appeared in the letter. Buckalew did not believe Carter had made
any progress in addressing her drug abuse problem. Buckalew testified that Carter tested
positive for controlled substances in June, July and December 2003.

 Carter also testified concerning her counseling experience with Sorrells and
concerning her drug usage. Carter testified she wanted nothing to do in the future with
persons who use drugs. Sorrells' letter indicated Carter's relapse prevention plan included
staying away from people and places associated with drugs. Considering the entire record,
and keeping in mind the role of the trial court in a bench trial as judge of the credibility of
witnesses, (4) the evidence does not prevent the conclusion that Carter would continue her
course of conduct involving drug abuse, endangering her child in the future. 


 Carter testified she was forty years old. She and Dale had never married, but had
been together for fifteen or sixteen years, "on and off." Testimony also revealed they had
no other children together, but each had two other children. Carter's two children were
adults, ages 19 and 21. Dale's two children were teenagers, living with his ex-wife. 

 The evidence concerning the stability of the home Carter would provide the child
also was mixed. On appeal, Carter cites evidence that she had, until two months before
trial, maintained a home. She resided in a rented house for six years, but was evicted two
months prior to trial when she lost HUD funding for the home. Her testimony indicated she
did not have a permanent place to live and was uncertain where she would be living in the
future. (5) At the time of trial, Carter was unemployed and had not held a job for two years. 
Carter also testified she was diagnosed with hepatitis C during her pregnancy with
S.M.L.D. 

 Carter argues she demonstrated her care and concern for the child by attending the
visitation the department allowed her. She argues she had no opportunity to establish a
relationship with her child because the department took custody of S.M.L.D. at the hospital. 
Evidence indicates that Carter complied with some of the department's requirements in an
effort to regain custody of her child by completing the FAME program and parenting
classes. 

 The evidence concerning the best interest of the child with respect to termination
of Dale's parental rights included Dale's testimony that while incarcerated, he met the
department's requirements by taking a parenting class and receiving counseling. He and
Carter both testified that Dale regularly maintained employment when not incarcerated. 
As noted, though, Dale admitted to continued drug use. He twice had participated in a
SAFPE (6) program, but continued using drugs when he was released on parole and even
when participating in a twelve-step recovery program. He candidly acknowledged that
"there's really no guarantee" the next few years would be different from recent years with
respect to his drug use. 

 Dale offered no specific plans for caring for S.M.L.D.'s needs. When Dale was
asked where S.M.L.D. should be placed until he was released from prison, he requested
she be returned to Carter. The future of Dale's relationship with Carter is unclear from the
testimony. Carter testified that Dale planned to come live with her on his release from
prison, but that plan is difficult to reconcile with Carter's expressed intention to avoid drug
abusers, given Dale's admitted continuing problem with drug abuse. 

 The uncontroverted evidence supporting the trial court's finding that Carter engaged
in conduct endangering her child's well-being, together with the evidence of the likelihood
of further danger to the child's well-being from her drug abuse, and evidence of her inability
to provide for the needs of the child, including Carter's lack of employment and of a place
to live, support the court's finding that termination of Carter's parental rights was in
S.M.L.D.'s best interest. Similarly, the undisputed evidence of Dale's endangering course
of conduct and of his continuing drug abuse, his lack of any plan for the infant's care other
than her return to Carter, and the uncertainty of Carter and Dale's own future, support the
same finding with respect to Dale. With respect both to Carter and Dale, evidence contrary
to the finding came largely through their own testimony, and in any event was not so
significant as to prevent the trial court reasonably from forming a firm belief or conviction
of the truth of the finding. See In re J.F.C., 96 S.W.3d at 266. At the time of trial, S.M.L.D.
remained in foster care and appeared well bonded to her foster parents. The department
plans to allow the child to be adopted. The record contains legally and factually sufficient
clear and convincing evidence for the court to have determined that termination of the
parent-child relationship between the child and each of her biological parents was in the
child's best interest. 

 Accordingly, we overrule the issues urged by Carter and by Dale, and affirm the trial
court's judgment.


 James T. Campbell

 Justice





1. 
 § 
2. ' ' 
 
3. ' ' 
4. 
 
 
 
 - 
5. 
 
" " 
 ' 
 
6. §