11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                        Opinion

 

In the Matter of the
Guardianship of M.E.R.

No.  11-00-00366-CV C Appeal from Taylor County

 

M.E.R., a
69-year-old female, appeals from the trial court=s order appointing the Texas Department of Protective and Regulatory
Services (TDPRS) as guardian of her person with full authority.  We affirm.

In her
first issue on appeal, M.E.R. contends that there was insufficient evidence to
support the trial court=s finding that she is incapacitated. 
Before appointing a guardian, the trial court must find by clear and
convincing evidence that the proposed ward is an incapacitated person.  TEX. PROB. CODE ANN. ' 684(a)(1) (Vernon Supp. 2001).  TEX. PROB. CODE ANN. ' 601(13)(B) (Vernon Supp. 2001) defines A[i]ncapacitated person@ as:

[A]n adult individual who, because of a
physical or mental condition, is substantially unable to provide food,
clothing, or shelter for himself or herself, to care for the individual=s own physical health, or to manage the
individual=s own financial affairs. 

 

The heightened burden of
proof in the trial court does not affect the appellate standard of review for
factual sufficiency.  In the Interest of
M.D.S., 1 S.W.3d 190, 197 (Tex.App. - Amarillo 1999, no pet=n); In the Interest of J.N.R., 982 S.W.2d
137, 142 (Tex.App. - Houston [1st Dist.] 1998, no pet=n).[1]  Thus, we consider and weigh all the evidence
in the case and affirm the judgment unless the finding is so contrary to the
overwhelming weight of the evidence as to be clearly wrong and unjust.  Plas-Tex, Inc. v. U.S. Steel Corporation,
772 S.W.2d 442, 445 (Tex.1989); In re King=s Estate, 244 S.W.2d 660, 661 (Tex.1951).








At trial,
Mary Rose, M.E.R.=s
daughter, testified that she and her sister went to M.E.R.=s house in December of 1999 and that they Abagged up six bags of trash@ in the house.  Rose stated that there were Kleenexes, newspapers, magazines, and
old pill bottles all over the house. 
Rose also stated that M.E.R. was inverting the numbers on her car
payment and was continually paying less than her required payment.

Rose
returned in March of 2000 and again found a lot of trash in M.E.R.=s home. 
Rose stated that M.E.R. was not bathing and had not washed her
hair.  Rose and her sister again went to
M.E.R.=s home in May of 2000 and found that the
bathroom was not working properly, that M.E.R. had not changed her clothes in
four days, and that her hair was dirty. 
Rose testified that M.E.R. would sometimes check into a motel to take a
bath.  Rose stated that M.E.R. had
ordered a lot of magazines and did not remember ordering them and that she
continued to invert the numbers on her car payment which caused her to incur
late charges. 

Alice
Kessner, an investigator for Adult Protective Services, testified at trial that
she met with M.E.R. in M.E.R.=s home on June 2, 2000.  Kessner
stated that the house was cluttered but that she Ahad seen worse.@  Kessner stated that M.E.R.
focused a lot on a sexual relationship she claimed to have had with her
doctor.   M.E.R. told Kessner that the
doctor had come to her home on New Year=s Eve, had had sex with her, and had left a case of beer in the
refrigerator.   Kessner believed that
M.E.R. was delusional.  M.E.R. told
Kessner that her car lights came on by themselves at night.  Kessner called the dealership and spoke to
the service manager who told her that M.E.R. had brought the car in for repair
and returned and picked up the car.  The
following day, M.E.R. had someone take her back to the dealership, claiming
that they had kept her keys; however, M.E.R. had driven the car home with the
keys.  After speaking with several of
M.E.R.=s doctors, Kessner determined that M.E.R.
should no longer remain in her home. 








With its
application for permanent guardianship, the TDPRS attached a letter from Dr.
Ernesto Fernandez, M.D., who stated that he had reviewed psychological testing
performed on M.E.R. and had conducted his own psychiatric evaluation and
determined that she was incompetent to live by herself due to psychiatric
problems.  Dr. Fernandez recommended that
M.E.R. be placed in an appropriate structured environment.  The application also included a report from
Dr. Samuel D. Brinkman, Ph.D., a clinical neuropsychologist, who, after
detailing the results from numerous tests, concluded that M.E.R. suffers from
dementia and stated that M.E.R. Adoes not have adequate mental abilities to provide for her own
well-being.@  At
trial, a diagnosis by Dr. Robert Fedderman was read into the record.  Dr. Fedderman diagnosed M.E.R. as suffering
from dementia and concluded that she Awould not be able to live independently without danger to her health
and safety.@ 

M.E.R.
testified on her own behalf at trial. 
M.E.R. told the trial court that she takes her required medication, that
she is able to feed herself, and that she showers A[s]ometimes everyday.@ 
M.E.R. stated that she paid her bills, that she banked at First National
Bank, and that she received $584.04 
from an annuity check and $459.00 from Social Security.  M.E.R. stated that her car payment is
$274.83 but that she pays $247.83 Aon account of that one month now.@  In response to her counsel=s question of how long she had lived in her
home, M.E.R. stated:

I started
buying that house in the fall of >76.  We had to go to Colorado
for my oldest sister=s
funeral, and I knew I didn=t have her anymore so I didn=t - - the nurses was buying homes and fixing them up so whenever they
retire.

 

In response to whether
she was a danger to others, M.E.R. stated: 
AMy husband was always getting me
pregnant.  I see now he was right.@    On
cross-examination, when asked if she remembered being interviewed by Dr.
Brinkman, M.E.R. responded: A[H]e interviewed me at the Abilene State School after I had foot
surgery.  I don=t remember ever seeing that man in my life.@ 

Margaret
Stracener, M.E.R.=s
neighbor, testified at trial that she saw M.E.R. at least once a month.  Stracener stated that M.E.R. Aate just fine@ and that Ashe=s always clean and nice.@ 
Stracener testified that M.E.R. was able to drive, clothe herself, and
provide for her own food and shelter. 

The trial
court heard evidence that M.E.R. was unable to care for herself and for her
home.  Additionally, TEX. PROB. CODE
ANN. ' 686(b) (Vernon Supp. 2001) provides that A[c]urrent medical, psychological, and
intellectual testing records are a sufficient basis for a determination of
guardianship.@ Viewing all of the evidence, the trial court=s finding that M.E.R. is incapacitated is not
so contrary to the overwhelming weight of the evidence as to be clearly wrong
and unjust.  M.E.R.=s first issue on appeal is overruled.








In her
second issue on appeal, M.E.R. argues that the evidence is insufficient to
support the trial court=s finding by clear and convincing evidence that the determination of
incapacity is evidenced by recurring acts within the preceding six months and
not by isolated instances of negligence or bad judgment. TEX. PROB. CODE ANN. ' 684(c) (Vernon Supp. 2001).  The trial was held on August 9, 2000; and
therefore, the determination of incapacity must be made by acts occurring from
February 9, 2000, until the date of trial. 
Section 684(c).  Although the
record indicates that Rose testified to occurrences in December 1999, the trial
court also heard evidence of recurring acts within the six-month period prior to
trial.  The record also indicated that
the reports of Dr. Fernandez, Dr. Brinkman, and Dr. Fedderman all occurred
during the six-month period prior to trial. 
M.E.R. has not shown that the trial court=s determination of incapacity was based upon acts prior to the
six-month period before trial.  M.E.R.=s second issue on appeal is overruled.

In her
third issue on appeal, M.E.R. complains that the evidence is insufficient to
support the  trial court=s finding by clear and convincing evidence
that it is in her best interest to have a guardian appointed for her.  In her fourth issue on appeal, M.E.R.
contends that the evidence is insufficient to support the trial court=s finding by a preponderance of the evidence
that she was Awithout capacity to care for herself or to
manage her property.@   The trial court heard evidence that M.E.R.
was unable to care for herself and for her home.  The trial court also had evidence from doctors indicating that
M.E.R. suffers from dementia and that she is unable to provide for her own
well-being.  The trial court=s findings that it is in M.E.R.=s best interest to have a guardian appointed
and that M.E.R. is without capacity to care for herself or to manage her
property are not so contrary to the overwhelming weight of the evidence as to
be clearly wrong and unjust.  M.E.R.=s third and fourth issues on appeal are
overruled.

In her
fifth issue on appeal, M.E.R. argues that the trial court erred in appointing a
permanent guardian for her because there was Ainsufficient evidence of [M.E.R.=s] current and relevant medical, psychological, and intellectual
testing records.@ TEX. PROB. CODE ANN. ' 687(a) (Vernon Supp. 2001) provides:

The court
may not grant an application to create a guardianship for an incapacitated
person...unless the applicant presents to the court a written letter or
certificate from a physician licensed in this state that is dated not earlier
than the 120th day before the date of the filing of the application and based
on an examination the physician performed not earlier than the 120th day before
the date of the filing of the application.

 

Section 687(a) also sets
out the information required to be in the letter or certificate.   TDPRS attached documentation to its
application for guardianship from both Dr. Fernandez and Dr. Brinkman.   These documents were not admitted at trial.








M.E.R.
argues that, because the documents were not admitted at trial, they cannot be
relied upon as evidence of incapacity. 
However, Section 687(a) states that the documents must be presented to
the trial court.  The documents were
filed with the application for guardianship and were part of the record before
the trial court.  See Trimble v. Texas
Department of Protective & Regulatory Service, 981 S.W.2d 211 (Tex.App. -
Houston [14th Dist.] 1998, no pet=n). 

M.E.R.
also argues that the trial court should not have considered the documents
because they contained inadmissible hearsay. 
Section 686(b) authorizes the trial court to base its determination of
guardianship on medical, psychological, and intellectual records.  The trial court did not abuse its discretion
in considering the records.  

M.E.R.
next argues that the documents do not comply with Section 687(a).  Dr. Fernandez=s letter does not contain the information required in Section
687(a).  We must, therefore, determine
whether the trial court=s decision to consider the documents probably caused the rendition of
an improper judgment or probably prevented M.E.R. from properly presenting her
case on appeal.  TEX.R.APP.P. 44.1;
Trimble v. Texas Department of Protective & Regulatory Service, supra. 

In Trimble,
the physician=s letter did not comply with Section 687(a)
in that the letter and examination occurred outside of the 120 days prescribed
by statute.  The court held that the
error was not reversible because the examination was only a few weeks outside
of the required time frame and that the report was consistent with the evidence
presented at trial concerning the proposed ward=s ability to care for herself and her property.








In the
present case, Dr. Fernandez=s letter states that he had reviewed the psychological testing
performed on M.E.R. in May of 2000 and that his decision that M.E.R. was
incompetent to live by herself was based upon psychological testing performed
by two psychologists as well as his own psychiatric evaluation.  The report of Dr. Brinkman, dated May 25,
2000, was also included with the application. 
Dr. Brinkman=s
report details M.E.R.=s
history, intellectual abilities, language skills, as well as the results from a
number of other tests.  Dr. Brinkman=s report discusses M.E.R.=s medication and its effect on her condition.
The two documents together contain the substantial information required by
Section 687(a).  The evidence at trial
was consistent with the doctors conclusions that M.E.R. was unable to care for
herself or her property.  Moreover,
M.E.R. testified on her own behalf at trial, and the trial court observed her
demeanor.  M.E.R. has not shown that the
trial court=s consideration of the documents probably
caused the rendition of an improper judgment or prevented her from presenting
her case on appeal.  Rule 44.1.   M.E.R.=s fifth issue on appeal is overruled.

The
judgment of the trial court is affirmed.

 

W. G.
ARNOT, III

CHIEF
JUSTICE

 

September 20, 2001

Do not publish.  See TEX.R.APP.P. 47.3(b).

Panel consists of: Arnot, C.J., and

Wright, J., and McCall, J.











[1]But see In the Best Interest and Protection of G.B.R,
953 S.W.2d 391, 396 (Tex.App. - El Paso 1997, no writ); In the Interest of
L.R.M. and J.J.M., 763 S.W.2d 64, 66 (Tex.App. - Fort Worth 1989, no writ);
Neiswander v. Bailey, 645 S.W.2d 835, 836 (Tex.App. - Dallas 1982, no
writ)(adopting a higher standard of review for factual sufficiency when the
burden of proof below is clear and convincing).