

## NUMBER 13-13-00468-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI – EDINBURG

### IN THE INTEREST OF A.B., D.B. AND D.B., CHILDREN

**On appeal from the 25th District Court
of Lavaca County, Texas.**

## MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Benavides, and Longoria
Memorandum Opinion by Justice Benavides**

By two issues, appellant Darrell B. ("Father")[1] claims the evidence used to terminate his parental rights over D.B. was insufficient to support termination. We affirm.

---

[1] We will use initials and descriptive words such as "Mother" and "Father" to identify the parties in this case to protect the privacy of the children involved in this matter. *See* TEX. R. APP. P. 9.8. For reference throughout this opinion, the appellant Darrell B. will be referred to as "Father"; Rachel B. is referred to as "Mother"; Mother's boyfriend, Chris W., is "Boyfriend"; and Mother's sister is "Aunt."

## I. FACTUAL BACKGROUND

On June 16, 2012, the Polk County Sheriff's Department was called to Rachel B.'s ("Mother's") home on a report that there was a domestic dispute. Mother was the parent of daughter A.B. and sons D.B. and D.B. ("K.B."),[2] and she lived with her boyfriend, Chris W. ("Boyfriend"). The sheriff's office was also informed that D.B. may have been recently abused.

Deputy Terry Valka testified that when he arrived at the home, Boyfriend had left the home to go to a nearby Valero gas station. Deputy Valka located Boyfriend at the gas station and returned to the home with him to further question him and Mother. Deputy Valka deduced that both adults were intoxicated. Deputy Valka asked to examine D.B., Mother's seven-year-old son, but Mother refused. He then asked to search Mother's vehicle, and Mother agreed. Deputy Valka found methamphetamine in the car. After returning from the car, Deputy Valka again asked to examine D.B.; this time, Mother consented. Deputy Valka testified that he saw severe bruising on D.B.'s backside. He described the bruising as "pointing down like a handprint, with the five fingers, and it was already purple." He further testified that "there was another large bruise on top of [D.B.'s] buttocks and like a finger mark behind the child's ear where the child said his ear was ringing." The couple was arrested for possession of a controlled substance. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115 (West 2010). Boyfriend was taken to the Polk County jail, while Mother was allowed to accompany her sons D.B. and K.B. to the emergency room for further medical examination.[3]

---

[2] Both sons' initials are D.B. To avoid confusion, we will refer to the younger son as "K.B." Only D.B. is the subject of this appeal.

[3] Mother's daughter, ten-year-old A.B., lived with Mother's sister ("Aunt") at the time and was not present at the home.

The sheriff's office called the Texas Department of Family and Protective Services (the "Department") to the emergency room. Department investigator Rachel Drake went to the hospital and learned that Boyfriend had beaten D.B. because he and his four-year-old little brother K.B. "had stuck their fingers in the bag of meth and tasted it and said it was salty and they got in trouble for that." Investigator Drake also noted that D.B. had a rash on the back of his neck and on his stomach, and was unkempt, dirty, and covered in insect bites.

This was the fourth time the Department had received a referral for Mother. Mother had previously been investigated in 2007, 2009, and 2011. In 2007, the Department's investigation revealed that Mother had been arrested for possessing crack cocaine in her vehicle, and she did not have a stable residence for her children, A.B. and D.B., at the time. In 2009, the Department again discovered that Mother was abusing cocaine and that her husband, Father, was physically abusive to her. Mother was referred to Family-Based Safety Services at this time, which included counseling, drug treatment, and random drug testing. In 2011, Mother and Boyfriend were suspected of smoking marijuana in their apartment while D.B. and his little brother K.B. were playing in the apartment parking lot unattended. Because both Mother and Boyfriend tested negative for drugs, however, the Department closed this investigation.

Based on the 2012 incident, the Department began proceedings to terminate Mother's parental rights, as well as the parental rights of the children's fathers.[4] Father, the appellant in this case and the biological father of D.B., was incarcerated in the

---

[4] The three children had different fathers. A.B.'s father, Steve W., lived in Alabama. D.B.'s father, Darrell B., is the "Father" in this opinion. The court made findings at trial that K.B.'s father was deceased.

3

Lavaca County jail at this time. He had been convicted of burglary of a building and was serving a two-year jail sentence. *See* TEX. PENAL CODE ANN. § 30.02 (West 2011). He had a prior criminal history, as well.

At the termination hearing, Mother testified that Father had, at different times during their marriage, pulled her hair and hit or punched her. At one point he broke some of her ribs. Some of these instances of violence occurred in front of her children, including D.B. Mother also testified that she and Father used drugs "most of the time" they were together when "he wasn't incarcerated." Dawn S., Mother's sister ("Aunt"), testified that Mother and Father's relationship "has always been very abusive" and that Father "used to beat [Mother] repeatedly when they were together." Aunt also testified that Father had once ripped Mother's hair out of one side of her head, and that D.B. had seen Father smash in a car's windshield. Aunt stated that, despite the frequent beatings, Mother refused to press charges against Father. Although Father was present with his attorney throughout the termination proceedings,[5] he did not testify at trial.

The trial court terminated Mother's and Father's parental rights.[6] Father filed this appeal.

## II. STANDARD OF REVIEW & APPLICABLE LAW

A court may order the termination of a parent-child relationship only if it is shown by clear and convincing evidence that a parent has met at least one of the statutory

---

[5] At the time of the proceedings, Father was incarcerated at the Mineral Wells Pre-Parole Transfer Facility in Mineral Wells, Texas. The trial court judge issued a bench warrant authorizing Father to be transferred to the Lavaca County Courthouse to attend the termination hearing.

[6] The trial court also terminated the rights of A.B.'s father, Steve W., who resided in Alabama. The father of K.B., as previously noted, was deceased. Neither Mother nor Steve W. appeal the termination of their parental rights.

4

factors listed in the family code, coupled with an additional finding by clear and convincing evidence that termination is in the child's best interest. *See* TEX. FAM. CODE ANN. § 161.001 (West 2008); *In re J.F.C.*, 96 S.W.3d 256, 261 (Tex. 2002) (noting the two-prong test in deciding parental rights termination and that one act or omission of conduct satisfies the first prong); *In re E.M.N.*, 221 S.W.3d 815, 820–21 (Tex. App.—Fort Worth 2007, no pet.).

> In a legal sufficiency review:

> a court should look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. To give appropriate deference to the factfinder's conclusions and the role of a court conducting a legal sufficiency review, looking at the evidence in the light most favorable to the judgment means that a reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. This does not mean that a court must disregard *all* evidence that does not support the finding. Disregarding undisputed facts that do not support the finding could skew the analysis of whether there is clear and convincing evidence.

*In re J.F.C.*, 96 S.W.3d at 266. Clear and convincing evidence is described as "that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West 2011).

In reviewing challenges to the factual sufficiency of the evidence in a termination proceeding, appellate courts should "inquire 'whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the . . . allegations'" from the entire record. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam) (quoting *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002)). This heightened

standard of review is mandated not only by the family code, *see* TEX. FAM. CODE ANN. §

161.001, but also by the Due Process Clause of the United States Constitution. *In re

E.N.C.*, 384 S.W.3d 796, 802 (Tex. 2012) (citing *Santosky v. Kramer*, 455 U.S. 745,

753–54 (1982)). We strictly construe involuntary termination statutes in favor of the

parent. *Id.*

The Texas Supreme Court has provided a widely-cited, non-exhaustive list of

factors that courts may consider in ascertaining the best interests of a child. *See Holley

v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). Among them are:

(1)     the desires of the child;

(2)     emotional and physical needs of the child now and in the future;

(3)     emotional and physical danger to the child now and in the future;

(4)     parental abilities of individuals seeking custody;

(5)     programs available to assist individuals to promote the best interest of the child;

(6)     plans for the child by these individuals or by the agency seeking custody;

(7)     stability of the home or proposed placement;

(8)     acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and

(9)     any excuse for the acts or omissions of the parent.

*Id.*

Aside from these listed factors, we must take into account other considerations

under an elevated standard of review because a "parental rights termination proceeding

encumbers a value 'far more precious than any property right' and is consequently

governed by special rules." *In re E.R.*, 385 S.W.3d 552, 555 (Tex. 2012) (quoting

*Santosky*, 455 U.S. at 758). In these cases, we are "faced not with the ordinary dispute

6

about how to allocate money in a contract or tort action," but instead, we must decide how to reconcile "a parent's desire to raise [the] child with the State's responsibility to promote the child's best interest." *Id.*

### III. DISCUSSION

Father contends that the evidence is legally and factually insufficient to support termination of his parental rights under section 161.001(1)(D) and (E) of the Texas Family Code because he was incarcerated on the day D.B. was removed from Mother's care. *See* TEX. FAM. CODE ANN. § 161.001(1)(D), (E). Father argues that that it was Mother and Boyfriend's behavior that prompted the termination proceedings, not his. Therefore, he asserts that his parental rights should not have been terminated by the court.

Here, the trial court found by clear and convincing evidence that Father:

(1) knowingly placed or knowingly allowed [D.B.] to remain in conditions or surroundings which endanger the physical or emotional well-being of [D.B.], *see id.* § 161.001(1)(D); and

(2) engaged in conduct or knowingly placed [D.B.] with persons who engaged in conduct which endangers the physical or emotional well-being of the child, *see id.* § 161.001(1)(E).

Father's argument, however, fails to take into account Father's behavior during the time he lived with Mother. There was ample evidence that Father was physically abusive to Mother during their marriage. Domestic violence and lack of self-control can be considered evidence of endangerment to children. *In re B.J.B.*, 546 S.W.2d 674, 677 (Tex. App.—Texarkana 1977, writ ref'd n.r.e.). "The father's demonstrated want of self control and propensity for aggression and vicious, cruel, brutal violence against one who did not conform to his will projected a threat that might reasonably be construed as

7

endangering the physical well-being of children in his care, custody and control." *Id.*; *see also Walker v. Tex. Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 617 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). Mother testified that "there have been times we would fight and then get back together. [Father] has pulled my hair; he has hit me; he has punched me. At one point he did break a couple of my ribs." Significantly, some of this violence occurred in front of D.B. Aunt confirmed this behavior by her testimony, recalling that Father had once ripped Mother's hair out of one side of her head, and that D.B. had seen Father smash in a car's windshield. We hold that this evidence of domestic violence constitutes clear and convincing evidence of endangerment under sections 161.001(1)(D) and (E). *See* TEX. FAM. CODE ANN. § 161.001(1)(D), (E).

There was also evidence that Father abused drugs with Mother. Mother told the court that she and Father used drugs "most of the time" they were together "when he wasn't incarcerated" in the past. Illegal drug use may support termination under section 161.001(1)(E) because it exposes the child to the possibility that the parent may be impaired or imprisoned. *See Walker*, 312 S.W.3d at 617–18. "Evidence of narcotics use and its effect on a parent's life and ability to parent may establish that the parent has engaged in an endangering course of conduct." *Id.* at 618. Father's established history of drug use is another factor supporting the court's endangerment findings.

In addition, although Father is correct that it was not his specific behavior that triggered the Department's termination proceedings, Texas law holds that a parent's "consistent inability to avoid criminal activity implies a conscious disregard for his parental responsibilities." *In re J.N.R.*, 982 S.W.2d 137, 143 (Tex. App.—Houston [1st

8

Dist.] 1998, no pet). Father's criminal history, including his most recent conviction and incarceration for burglary, is an additional factor supporting the court's findings that Father's conduct endangered D.B.

Accordingly, we find there was clear and convincing evidence to show that Father knowingly placed or knowingly allowed D.B. to remain in conditions or surroundings which endangered D.B.'s physical or emotional well-being, and engaged in conduct or knowingly placed D.B. with persons who engaged in conduct which endangered D.B.'s physical or emotional well-being. *See* TEX. FAM. CODE ANN. § 161.001(D), (E). We overrule Father's issues.

As a final remark, we note that Father failed to challenge the finding that terminating his parental rights would not be in the best interests of the child in this appeal. Because Father was required to challenge both the statutory grounds and the best interests findings of the trial court, the failure to challenge the latter would be grounds to affirm the trial court's decision by itself. *See id.* § 161.001(1)–(2); *In re J.F.C.*, 96 S.W.3d at 261.

## IV. CONCLUSION

We affirm the judgment of the trial court.

 

_____
GINA BENAVIDES,
Justice

Delivered and filed the
30th day of January, 2014.

9